289 So.2d 129 (1974)
William M. BARNETT et al.
v.
Robert E. DEVELLE et al.
No. 53654.
Supreme Court of Louisiana.
January 21, 1974.
Rehearings Denied February 15, 1974.
*132 Ralph D. Dwyer, Jr., Many, Hartman, LoCoco & Dwyer, New Orleans, Blake Arata, City Atty., Gerald Stewart, Asst. City Atty., for plaintiffs-applicants.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, First Asst. Atty. Gen., Louis A. Gerdes, Jr., Dale C. Wilks, Special Counsel to Atty. Gen., Maurice S. Cazaubon, Jr., C. Paul Barker, Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy, New Orleans, for defendants-respondents.
PAUL B. LANDRY, Jr., Justice ad hoc.
On application of plaintiffs, members of the Civil Service Commission of the City of New Orleans (Commission), writs were granted herein to review the judgment of the Court of Appeal, Fourth Circuit, 282 So.2d 528, affirming a judgment of the District Court, Orleans Parish, dismissing *133 the Commission's action for declaratory judgment pronouncing the unconstitutionality of Acts 55 and 57 of the Extra Session of 1968, and enjoining defendants, the City Council of the City of New Orleans (Council) from implementing or enforcing said statutes. Two fundamental issues are presented for review: (1) Are Acts 55 and 57, which respectively fix the salaries and annual vacation time of firemen in cities of 12,000 or more population, constitutional as applied to the City of New Orleans which has a City Civil Service Commission provided for cities having a population in excess of 250,000 population, pursuant to La.Const. Art. XIV, Section 15(A)(1), and (2) if said statutes are unconstitutional, is the Commission entitled to the requested injunctive relief?
We reverse, and declare the statutes unconstitutional. We find the Commission to be entitled to limited injunctive relief.
The Commission names as defendants the members of the Council, Robert E. Develle (succeeded by Henry Simmons), Director of the City Department of Finance, and Richard J. Kernion, Chief Administrative Officer of the City. C. J. Perez intervened in the action individually, as a member of the Fire Department of the City of New Orleans (City), on behalf of all other members of the City Fire Department and the New Orleans Firefighters Association Local 632, AFL-CIO (Firefighters), as President of the Union. Numerous other individual members of the City Fire Department intervened. The State of Louisiana, through the Attorney General, Honorable William J. Guste, Jr., also intervened inasmuch as the validity of two state statutes was attacked. All Intervenors save the Attorney General are sometimes hereinafter collectively referred to as "Firemen".
The Council filed no exceptions. The Council did, however, answer the Commission's petition generally agreeing with the allegations thereof, and concurring in the Commission's contentions that Acts 55 and 57 are unconstitutional. All Intervenors filed exceptions of no right and no cause of action based essentially on the ground that the matter is res judicata in that prior litigation between the parties at bar (or their alleged privies) has established the validity of the statutes in question. In affirming the judgment of the trial court, the Court of Appeal held that the trial court correctly sustained Intervenors' exceptions of no right and no cause of action on the finding that all issues regarding validity of the statutes had been previously determined between the parties. All Intervenors, the Attorney General excepted, filed exceptions of laches, estoppel and res judicata which were not passed upon by the trial court or Court of Appeal, but which exceptions are reurged here.
Although the members of the Commission initially sued in their individual names, the pleadings have been amended in this court, with Intervenors' consent, naming the Commission as party plaintiff in its official capacity.
A clear understanding of the Commission's charge of unconstitutionality and Intervenors' exceptions requires narration in some details of the pleadings herein, and a preliminary discussion of prior litigation between Firefighters and the City Council regarding the validity of Acts 55 and 57 and certain other legislation.
In substance, the petition alleges the Council proposes to disburse a sum estimated at between $5,000,000 and $7,000,000 to those members of the City Civil Service System classified as Fireman, to the prejudice of members of other classes of the system, some of whom perform functions similar to persons bearing the classification Firemen. Said proposed action is alleged to constitute an unlawful usurpation of the Commission's exclusive constitutional authority in that it is a legislative attempt to prescribe and adopt a classification and pay plan for a limited number of classified employees of the City, namely, members of the Department of Fire, and establish minimum, maximum and intermediate rates of *134 compensation for the single class, in contravention of the classification plans and uniform pay plan previously established for all City Service Employees by the Commission and approved by the City Council, all as provided for and authorized by La. Const. Art. XIV, Sec. 15(I)(c).
The petition also asserts that Acts 55 and 57 are repugnant to and violative of Const. Art. XIV, Sec. 15(i), in that they seek to place in operation a classification and pay plan which: (1) has not been prepared, submitted or recommended to the Commission by the City Personnel Department for the Commission's consideration; (2) has not been established or adopted by the Commission as required by the Constitution and (3) which has not been approved by the City Council.
The petition further alleges that it is the Commission's constitutional duty to adopt and enforce rules having the force and effect of law, regulating, among other things, the rates of pay for all employees of the City Classified Service, and to establish a uniform pay plan for all employees which plan becomes effective upon approval by the City Council. The Commission further avows that, in obedience to its constitutional mandate, the Commission has established a uniform pay plan for all classified city employees which plan has been duly approved and adopted by the City Council, and is presently in full force and effect and applicable to all city civil service employees.
The petition alleges that implementation of Acts 55 and 57 will cause the Commission irreparable harm by compelling the Commission to commit illegal acts violative of and in contradiction of their constitutionally mandated duties.
Finally, the petition recites, that if Acts 55 and 57 are declared valid a sum estimated at between $5,000,000 and $7,000,000 (a figure not disputed by Intervenors) will be distributed to a select class of municipal employees (Firemen), to the prejudice of approximately 9,000 city employees in other classes of municipal employment whose interest and welfare are subject to protection of the Commission. It is alleged that these other employees would suffer irreparable injury, and that the public fisc of the City of New Orleans would be adversely affected.
In 1967, Firefighters entered suit against the City to enjoin the City from implementing a plan calling for a 60 hour work week for firemen, and also requiring firemen to work as many overtime hours as required. Firefighters contended the proposed action of the City violated a contract between the City and Firefighters requiring Firemen to work a 52 hour week, plus four hours overtime at a stipulated rate, and such additional overtime as the Firemen chose. The City defended its action on the basis of an emergency declared pursuant to LSA-R.S. 33:1994. One of the City's numerous defenses was an exception of no cause of action based on the ground that the Commission possessed exclusive authority regarding the establishment and recommendation of work hours of all city classified employees pursuant to La.Const. Art. XIV, Sec. 15(I)(6), and that the action should have been brought against the Commission. The record disclosed that the Commission had not in fact established or recommended hours of work for Firemen. The trial court enjoined the City from implementing the proposed work week and the City appealed. On appeal, the Court of Appeal, Fourth Circuit, affirmed. See New Orleans Firefighters Ass'n Local 632, AFL-CIO v. City of New Orleans, 204 So.2d 690 (Firefighters I). In affirming the trial court, the Court of Appeal quoted language from the lower court's opinion to the effect that La.Const. Art. XIV, Sec. 15(I) (6) requires the City to approve and adopt hours of work schedules recommended by the Commission. The Court of Appeal also held, however, that, in this instance, the Commission had not recommended any hours of work schedule, but since the City had adopted such a schedule without a Commission recommendation, the City would not be permitted to deny the *135 validity of its action. The Commission was not a party to this action. The City did not apply to this court for writs of review, and the decision in Firefighters I became final.
Subsequent to Firefighters I, Firefighters instituted three actions which were consolidated for trial, and which are hereinafter designated as Firefighters II, namely, New Orleans Firefighters Association Local 632 AFL-CIO v. City of New Orleans, 230 So.2d 326. In essence, this action sought to compel the City to: (1) Appropriate funds to implement Act 57 which provides for increased vacation pay for City Firemen; (2) appropriate funds to implement Act 55 relative to minimum salaries of Firemen, and (3) implement Act 55 insofar as it requires a minimum salary schedule for Firemen. At this juncture, it suffices to state that the Court of Appeal found on authority of Firefighters I, and other reasons hereinafter discussed, that Acts 55 and 57 did not violate either La.Const. Art. XIV, Sec. 15(I) (6) or Article XIV, Sec. 22, as contended by the City in resisting the action. The City applied to this court for writs of review, which application was denied.
Firefighters II was followed by Firefighters III, entitled New Orleans Firefighters Ass'n Local 632 AFL-CIO, et al. v. City of New Orleans, et al., 263 La. 649, 269 So.2d 194, a contempt proceeding by Firefighters to compel the City to implement the judgments which had become final in Firefighters II. The trial court held the City was not in contempt with regard to Firefighters' suit for vacation pay, but that the City was in contempt in regard to the suits for longevity pay and the fixing of minimum salaries for firemen. The trial court also found that the City's contempt was not willful. All parties appealed. The Fourth Circuit affirmed the trial court's holding that the City was not in contempt in the suit involving vacations. The Court of Appeal reversed the trial court's holding that the City was in contempt in the longevity and minimum salary suits, on the ground that, without a finding of willful disobedience to a decree, there can be no conviction of even a constructive contempt. The Court of Appeal remanded the longevity and minimum salary cases to the trial court for the setting of a reasonable time in which the City could comply therewith or face contempt proceedings. Firefighters and City both applied for writs. This court affirmed the decision of the Court of Appeal. We note that Firefighters III is germane to the present suit only on the question of res judicata inasmuch as we expressly held therein that the decision in Firefighters II was final and res judicata as to the parties to that action.
Subsequent to Firefighters II but before Firefighters III this Court decided Louisiana Civil Service League, et al. v. Forbes, 258 La. 390, 246 So.2d 800, which held unconstitutional Act 33 of 1970, which amended LSA-R.S. 40:1394, providing minimum salaries for State Troopers, and LSA-R.S. 32:388(G), 32:412 and 32:1306 (C), relative to certain fees to provide funds to implement the Trooper pay raise. In essence, Forbes held Act 33 of 1970 unconstitutional in violation of La.Const. Art. XIV, Sec. 15(I) (c) which provides exclusive authority in the State Civil Service Commission to establish pay scales for persons in the State Classified Service, in which category State Troopers fall. The Commission relies heavily on Forbes, contending that the same authority vested in the State Civil Service Commission regarding pay of classified state employees is vested in the Commission by the same constitutional provision as regards employees of the City Classified Service.
In urging the invalidity of Acts 55 and 57, the Commission also relies upon Sewerage and Water Board of New Orleans v. Barnett, 225 So.2d 381 (Fourth Circuit). Barnett was a mandamus action by plaintiff Board against the Commission to compel the Commission's recognition and implementation of a pay plan for the employees of plaintiff Board. The Commission had submitted a comprehensive pay *136 plan for all city classified employees, but the City Council had failed to act thereon. Because of the failure of the Council to act, plaintiff Board adopted a plan for its own employees, which plan was approved by the City Council. In substance, Barnett held that the plan proposed by the Sewerage and Water Board for its own employees was illegal even though approved by the City Council. The court found that the City Council alone had authority to approve a pay plan, and such authority was limited by constitutional provisions to a comprehensive plan for all classified employees.
La.Const.Art. XIV, Section 15, known as the Civil Service Amendment, was proposed by Act 18 of 1952, and approved by the electorate November 4, 1952. The title to said act reads as follows:

"A joint resolution Proposing an amendment to Section 15 of Article XIV of the Constitution of Louisiana, relative to the establishment in the State and cities of the State of a certain population, of a civil service system based on merit."
Section 15(A)(1) of Article XIV establishes in the State and cities in excess of 250,000 population, a system of classified civil service in which appointments and promotions in public service shall be based on merit, efficiency and fitness for a particular job category. Section 15(D) provides for a State Civil Service Commission composed of five members and a City Commission composed of three members for each city over 250,000 population. Section B creates the position of Director of Personnel of the State and each City Civil Service Commission
Section (I) recites:
"There is vested in the State Civil Service Commission and in the appropriate City Civil Service Commissions for the several cities respectively the authority * * * to adopt, amend, repeal and enforce rules which shall have the effect of law, regulating employment, transfers, promotion, removal, qualifications, and other personnel matters and transactions, and employment conditions and disbursements to employees, and carrying out generally in the foregoing respects, and as may be otherwise necessary to that end, the provisions and purposes of Civil Service as herein provided, including, but not by way of limitation, rules * * * (6) establishing and recommending hours of work, provided that the rules establishing the hours of work shall not become effective until approved by the governor or governing body of the city, as the case may be; (7) providing for attendance records, conditions for payment of salaries, training and educational programs for persons in the State or City Services, and a uniform service rating system (including the manner in which ratings are to be used in promotions, salary increases, suspensions, and separations)." (Emphasis by the Court.)
"The State and City Civil Service Commission shall adopt:
(c) Rules fixing minimum, maximum, and such intermediate rates of compensation as may be necessary, and establishing uniform pay plans and amendments thereof from time to time, according to duties and responsibilities, * * *. A pay plan, or amendments thereto, of the State shall become effective only after approval of the Governor; and a pay plan and amendments thereto for any city shall become effective only after approval by the governing body of said city." (Emphasis by the Court.)
La.Const. Art. XIV, Sec. 15(P)(6) states:

"Existing Laws. All existing laws relating to the State or City Civil Service System are continued in force insofar as not in conflict herewith, subject to the power of the Legislature to amend or repeal such laws or adopt new laws, provided said amendments or new laws are *137 supplementary and not in conflict herewith." (Emphasis by the Court.)
In pertinent part. La.Const. Art. XIV, Sec. 22 (The New Orleans Home Rule Charter) provides:
"Subject to the limitations elsewhere contained in this Constitution, the City of New Orleans is hereby declared to have a home rule charter consisting of Act 159 of 1912 as amended through the Regular Legislative Session of 1950, which said home rule charter may be amended or replaced only as hereinafter provided * * * *
The City of New Orleans, in addition to the powers expressly conferred upon it by Act 159 of 1912, as amended through the Regular Legislative Session of 1950, shall have the right and authority to adopt and enforce local police, sanitary and similar regulations and to do and perform all of the acts pertaining to its local affairs, property and government, which are necessary or proper in the legitimate exercise of its corporate powers and municipal functions. The City of New Orleans shall, however, not exercise any power or authority which is inconsistent or in conflict with any general law." (Emphasis by the Court.)
It is conceded that Acts 55 and 57 of the Extra Session of 1968 are general laws of the state inasmuch as they apply to firemen in all municipalities having a population of 12,000, or more, and to firemen paid by any parish or fire protection district. Act 55 amends and reenacts LSA-R. S. 33:1992, which governs and establishes minimum monthly salaries and longevity pay of firemen so employed. Act 57 amends and reenacts LSA-R.S. 33:1996, which fixes annual vacations for full time firemen employed by the agencies covered under Act 55.
In substance, the Commission contends: (1) Article XIV, Sec. 15(I)(6) and (c) vest in the Commission exclusive authority to establish rules governing hours of work and pay of all persons in the City Classified Service, including firemen; (2) Forbes and Firefighters II, above, represent diametrically opposite interpretations of the pertinent constitutional provision; (3) Forbes presents the correct interpretation, and under the constitutional article, the City Commission has the same power and authority as the State Civil Service Commission; (4) in Firefighters III, this Court perpetuated the error committed in Firefighters II, and (5) Firefighters II and III should be overruled and Acts 55 and 57 declared invalid, retroactively.

INTERVENORS' EXCEPTIONS
Intervenors filed exceptions of no right of action, no cause of action, laches, judicial estoppel and res judicata. All said exceptions were based in part on the ground that the precise issues being litigated here were finally determined in Firefighters I, II and III, which decisions are allegedly binding on the Commission.

EXCEPTION OF NO RIGHT OF ACTION
Because of the amendment of the Commission's pleadings naming the Commission as plaintiff herein in its official name and capacity, this exception has been abandoned.

EXCEPTION OF NO CAUSE OF ACTION
It is contended the Commission has power only to recommend pay plans and hours of work schedules to the City Council, therefore, the Commission lacks the authority or right to object to the distribution of funds by the City pursuant to a judgment which has become final, namely, the judgment in favor of Firemen in Firefighters II. Insofar as this argument is concerned, it is in the nature of an exception of no right of action rather than one of no cause of action. It is essentially an exception of want of interest in the subject *138 matter of the litigation. It suffices to say the answer to this argument lies in Section (I), above, which charges the Commission with the right, power and duty to adopt and enforce rules, having the effect of law, establishing pay plans and hours of work schedules for all members of the City Civil Service System. This constitutional authority vests the Commission with ample authority to challenge pay scales or work hour schedules proposed by the City contrary to plans therefor established and recommended by the Commission.
To the extent the exceptions of no cause of action are based on the ground that the issues herein have been previously litigated in Firefighters I, II and III, said exceptions are in the nature of exceptions of judicial estoppel, laches and res judicata. We will deal with this issue in our subsequent consideration of these latter exceptions.
An exception of no cause of action must be determined in the light of the well pleaded averments of plaintiff's petition, all of which must be accepted as true. Elliott v. Dupuy, 242 La. 173, 135 So.2d 54.
The Commission alleges it is constitutionally charged with the onus of establishing a pay plan and hours of work schedule for all members of the City Classified Service. It further avers that the City proposes to implement plans contrary thereto in usurpation of the Commission's delegated authority. We find this sufficient to state a cause of action.

JUDICIAL ESTOPPEL
This exception is based on the ground that the Commission had notice of Firefighters I and II because the Commission's present counsel appeared in those proceedings and fully represented the Commission's interests therein. It is alleged that in Firefighters II, the Commission's present counsel appeared as amicus curae counsel for the Civil Service League which reputedly is the Commission's alter ego. It is also urged that in Firefighters III, present counsel also represented the Civil Service League which was a party to that action, and therein urged the same grounds of unconstitutionality advanced in this suit. Intervenors contend that notice to counsel is notice to the Commission. It is also contended that the Commission, having notice of the prior actions, should have intervened therein.
In so contending, Intervenors cite and rely upon Hazard v. Agricultural Bank of Mississippi, 11 Rob. 326; LeBlanc v. Dashiell, 14 La. 274; Muntz v. Algiers & G. St. Ry., 116 La. 236, 40 So. 688; McKnight v. State, La.App., 68 So.2d 652; Williams v. Marionneaux, 240 La. 713, 124 So.2d 919; Cauefield v. Fidelity & Casualty Co. of N. Y., 5 Cir., 378 F.2d 876; Breeland v. Security Insurance Co. of New Haven, Conn., 5 Cir., 421 F.2d 918; California Co. v. Price, 234 La. 338, 99 So.2d 743; Quarles v. Lewis, 226 La. 76, 75 So.2d 14, and Donald v. O'Meara, 5 Cir., 473 F.2d 799.
Quarles v. Lewis, above, is authority for the rule that, while Louisiana does not apply the common law doctrine of res judicata to the extent that said doctrine encompasses all issues which may have been presented in prior litigation between the same parties, Louisiana nevertheless reaches the same result on the basis of judicial estoppel or waiver of rights. Our reading of the cited authorities, and others quoted therein, discloses that judicial estoppel is generally applied only to parties to the prior actions or their privies. In some instances, involving vicarious liability resulting from employer-employee and lessor-lessee relationships, it has been held that the requirement of identity of parties may be waived in the application of judicial estoppel. See Cauefield, above, and cases cited therein, particularly Muntz and McKnight, above, and Williams, above, which reversed Muntz and McKnight in part.
Inasmuch as judicial estoppel bars the normal assertion of rights, courts apply the doctrine with caution. American Bank *139 and Trust Company v. Trinity Universal Insurance Company et al., 251 La. 445, 205 So.2d 35, and authorities therein cited.
Intervenors equate knowledge by one's counsel of a prior action between third parties as the equivalent of legal notice to a client. We are unaware of any authority so holding, and have not been cited any to that effect. Assuming knowledge of the attorney to be chargeable to the client, such knowledge would not constitute legal notice for purposes of applying judicial estoppel. Mere knowledge of a prior action does not per se render a person vulnerable to a plea of judicial estoppel for failure to intervene therein where the party sought to be estopped was neither cited nor appeared in the prior action.
Although Intervenors urge legal relationship between the Commission and the Civil Service League sufficient to make the former privy of the latter, no proof of such relationship appears of record. We cannot assume it exists. The burden of proof rested on Intervenors who failed to discharge the onus. We find no privy between the Commission and the Civil Service League in this instance.
We unhesitatingly decline to apply judicial estoppel to a constitutionally created governmental agency based on a prior action between third parties in which the agency was neither cited nor made an appearance, and in which it was not privy to a party litigant. Intervenors' exception of judicial estoppel is therefore overruled.

EXCEPTION OF LACHES
Exceptors urge in support of their plea of laches the same contentions regarding notice of the former actions as were relied upon with regard to their exception of estoppel. Additionally, it is argued that the Director of Civil Service, of the City of New Orleans, an agent or representative of the Commission, appeared in one of the former actions as a witness; accordingly, the Commission is charged with notice of said proceedings. It is next alleged that the Commission's present counsel represented the Commission's "political arm", the Louisiana Civil Service League, in the former action, consequently, the Commission is charged with knowledge of said actions and those suits.
The doctrine of laches is predicated on equity. It addresses itself to the evidentiary effect of delay. It is based on the injustice that might result from the enforcement of long neglected rights, the difficulty, if not the impossibility, of ascertaining the truth of a matter in controversy, and doing justice between parties and on the public policy of discouraging stale and antiquated claims in the interest of the peace and repose of society. Labarre v. Rateau, 210 La. 34, 26 So.2d 279.
We find no basis for holding the Commission guilty of laches herein. As regards the question of notice of former actions between other parties, and alleged privy between the Commission and the Louisiana Civil Service League, the reasons given for our rejection of the exception of judicial estoppel are equally applicable to the exception of laches. Unquestionably the City Director of Civil Service is an agent of the Commission inasmuch as La.Const. Art. XIV, Sec. 15(F)(1) expressly provides for his appointment by the Commission. That the Director appeared as a witness in a former action between third parties in which the Commission was neither cited nor appeared adds no new dimension to the notice issue insofar as the doctrine of laches is concerned. Said appearance in no way prejudiced Intervenors' rights from an evidentiary standpoint, neither did it in any manner encourage presentation of an antiquated or stale demand. We find no merit in Intervenors' argument that the Commission has slept on its rights. The exceptions of laches are overruled.

COLLATERAL ATTACK
In contending the present suit is a prohibited collateral attack on the final judgments *140 rendered in Firefighters I, II and III, Intervenors rely upon California Co. v. Price, 234 La. 338, 99 So.2d 743; Allen v. Commercial National Bank in Shreveport, 243 La. 840, 147 So.2d 865; Collins v. Zachary Hardwood Lumber Co., La.App., 207 So.2d 796; Himel v. Connely, 195 La. 769, 197 So. 424 and Estevez v. Nabers, 5 Cir., 219 F.2d 321.
The rule prohibiting collateral attacks on judgments applies to all parties to the proceeding and their privies. 49 C. J.S., Judgments § 413, page 817. Our jurisprudence recognizes some exceptions to this general rule, included among which is the rule that a taxpayer may not collaterally attack a decision upholding the validity of a tax even though he was not a party to the action. See Hawthorne v. Jackson Parish School Board, 5 La.App. 508, in which a taxpayer was held so barred on a plea of res judicata.
It is the general rule that a stranger to an action may collaterally attack a judgment where he has rights, claims or interests which would be prejudiced or adversely affected by its enforcement, and which accrued prior to rendition of the judgment. 49 C.J.S., Judgments § 414, page 818.
Allen v. Commercial Bank, above, cited by Intervenors, is inapplicable. It involved an attack by a judgment debtor on a sale pursuant to judgment rendered in executory proceedings in which the debtor was a party litigant. California Company v. Price, above, is likewise inapplicable in that the court therein sustained a plea of res judicata on finding that a prior action between the same parties had litigated the issues sought to be retried.
Himel v. Connely, above, was a suit by an heir to collect his pro rata share of an $8,000.00 note owed plaintiff's grandmother's estate by decedent's daughter. Defendant plead res judicata based on a compromise judgment rendered in the decedent's estate in the settlement of three other mortgage notes owed decedent by her son to whom she had sold some property. Himel merely held that the only matter compromised in the succession proceeding was the three notes owed by the son, consequently, said judgment was not res judicata as to defendant's liability on the $8,000.00 note.
Collins v. Hardwood Lumber Co., Inc. et al., La.App., 207 So.2d 796, is factually inapposite. Therein an employee of defendant lumber company was killed in an automobile accident in Mississippi. Decedent's mother, Daisy Collins, resident of Louisiana, caused the succession to be administered in Mississippi alleging decedent left a wife from whom he was divorced and an illegitimate child. As Administratrix, the mother negotiated a settlement of the death claim in the sum of $2,500.00, plus $963.05 funeral expenses, which was paid by the employer pursuant to a judgment of authorization signed by the Mississippi court. In the administration proceedings, Fidelity and Deposit Company of Maryland issued an Administratrix's bond in the sum of $2,500.00. Later, decedent's lawful wife sued decedent's employer in a Louisiana court claiming workmen's compensation benefits. The employer third partied Daisy Collins and her bondsman, Fidelity, seeking indemnity. Fidelity resisted the third party demand on the ground it constituted a collateral attack on the Mississippi judgment which authorized compromise of the death claim with the employer's insured. The trial court dismissed the third party demand, and the court of appeal affirmed on the ground that the demand was a prohibited collateral attack on a final judgment. The result in Collins is correct under the circumstances of that case. Third party plaintiff (employer) was in effect a party to the Mississippi action since its insurer, and privy, paid a compromise settlement pursuant to judgment of the Mississippi court.
In Estevez v. Nabers, 5 Cir., 219 F.2d 321, plaintiff, an alien, brought suit against the Acting Officer in Charge, New Orleans *141 Office, United States Immigration and Naturalization Service, for a declaratory judgment reviewing an order of the Service declaring plaintiff an alien and ordering plaintiff's expulsion from the United States. Defendant, Acting Director, plead res judicata based on a prior action brought by plaintiff against the District Director, United States Immigration and Naturalization Service, which had declared plaintiff an alien and ordered plaintiff's expulsion after 60 days. The Court held in Estevez that the prior action declaring lack of a justiciable controversy was res judicata inasmuch as there was privy between the District Director and the Acting Officer in Charge of the New Orleans office, which officers were members of the same governmental department. Estevez is clearly inapposite because in that instance, privy was found to exist.
For the reasons hereinafter set forth in disposing of Intervenors' exception of res judicata, we find no privy between the Commission and the City based on the contention that the Commission is an agency or instrumentality of the City.
We find that the Commission is a stranger to the former actions. We also find that the Commission's constitutionally vested rights, powers and authority are adversely affected by the enforcement of the decrees rendered therein. We conclude, therefore, the Commission has the right to collaterally attack said judgments.

RES JUDICATA
Firemen contend the judgment in Firefighters II, which disposed of the issues presented here, is binding on the Commission which is an agency, department or instrumentality of and therefore a privy of the City. Firemen note that the members of the Commission are appointed by the City Council (La.Const. Art. XIV Sec. 15(A)(3), (D); the City provides revenues for operation of the Commission, and the City Department of Civil Service La.Const. Art. XIV, Sec. 15(T), and the Home Rule Charter of the City provides for a Civil Service Department composed of the Commission, a Director of Personnel and an executive staff which is an adjunct of City government. Because the Mayor and City Council were parties to the former litigation involving validity of Acts 55 and 57, it is contended those decisions are res judicata herein.
Res judicata applies only when the thing demanded is the same, the demand is founded on the same cause of action and the demand is between the same parties in the same capacities. LSA-C.C. art. 2286.
In support of the contention of privy between the Commission and the City Council, Firemen cite only 50 C.J.S. Verbo Judgments § 796, page 335, to the effect that generally a governmental body and its officers and agencies are in privity with each other so that each is bound by an action binding on the other. This rule, however, is inapplicable to the Commission which is a constitutionally created, independent body charged with a specific function, namely, to establish, supervise and enforce a Civil Service System for the City.
La.Const. Art. XIV, Sec. 15, leaves no room for doubt but that the Commission's authority over the City Civil Service System is not derived from or through the City, but from the constitutional authority contained in Articles XIV, Sections 15 and 22. Insofar as the City is concerned, the Commission is an independent, autonomous agency. Within its constitutionally delegated sphere of operation, the authority vested in the Commission is not subject to control by the City. The City cannot control the activities of the Commission, rather, within its sphere of authority, the purpose of the Commission is to control and regulate certain aspects of city government, namely, the manner in which the City deals with its Civil Service Employees. To hold that the City, which is subservient to the Commission in matters regarding Civil Service, and bind the Commission by acts contrary to rules adopted *142 by the Commission, which have the force and effect of law, would produce anomalous results indeed. It would be the equivalent of holding that one who has control is bound by acts of a subordinate in contradiction of controls imposed by the superior. Such a ruling would completely divest the Commission of all authority vested in it by the Constitution. We hold, therefore, that insofar as the principle of res judicata is concerned, there is no privity between the Commission and the City Council. We find Intervenors' exception of res judicata without merit.

CONSTITUTIONALITY OF ACTS 55 AND 57
The Commission's position on constitutionality may be summarized as follows: (1) Article XIV, Sec. 15(I) (6) and (c) invest the Commission with exclusive authority to adopt rules having the force of law, including rules fixing compensation and establishing uniform pay plans, and amendments thereof governing all employees in the City Classified Service. The Commission concedes that pay plans fixed by it become effective only upon approval by the governing body of the City, but argues that where City approval of such a plan has been obtained, the plan becomes binding and effective and cannot thereafter be changed by either the City or the legislature without approval of the changes by the Commission; (2) Forbes, above, and Firefighters II, above, represent diametrically opposing interpretations of the pertinent constitutional provisions; (3) Forbes represents the correct interpretation, and Article XIV, Sec. 15(I) (6) and (c) confers upon the Commission precisely the same authority vested in the State Civil Service Commission; (4) Firefighters II represents an erroneous interpretation of the pertinent constitutional provision based on the holding in Firefighters I, which itself was erroneous; (5) Firefighters III perpetuates the error committed in Firefighters II, and (6) Firefighters II and III should be overruled, and Acts 55 and 57 declared unconstitutional.
The Commission maintans its authority with respect to both hours of employment and pay plans includes the power to fix, adopt and establish plans that are binding upon the City. On this basis, it is argued that Firefighters I erroneously held that, as regards work hours, the authority of the Commission is limited to recommendation only. It is suggested that the error in Firefighters I resulted from the court applying the provisions of Section (I) (6) and (7) (which mentions recommendation), without reference to Section 15(I) (c) which confers authority to adopt and enforce rules fixing rates of compensation and uniform pay plans. Next, the Commission argues that the error in Firefighters I respecting hours of employment was continued and extended in Firefighters II, which, relying on Firefighters I, held that, with respect to pay plans, the authority of the Commission is limited to recommendation. According to the Commission, the error was perpetuated and compounded by Firefighters III, in which this court determined that Firefighters II represents a final determination binding on the City.
The Commission next points out that subsequent to Firefighters II, this Court decided Forbes, above, which reached a determination contrary to Firefighters I and II on the question of whether the authority of the Commission is limited to recommendation in regard to pay plans. Forbes involved a suit by the Louisiana Civil Service League seeking to declare unconstitutional Act 33 of 1970, which provided a minimum pay scale for certain members of the Department of Public Safety, namely, State Troopers. The trial court held the act invalid in violation of Article XIV, Sec. 15(I) (c), which vests in the State Civil Service System authority to fix pay plans for employees in the State Classified System. This court affirmed.
In effect the Commission argues that Forbes is applicable here because Section *143 15 applies equally to the State Civil Service Commission and the Commission by virtue of the following language contained in the opening sentence of Section 15(I): "There is vested in the State Civil Service Commission and in the appropriate City Civil Service Commissions for the several cities respectively the authority and power * * *" (Emphasis by the Court.) The Commission argues that Section 15(I) makes no distinction between the State and City Commissions with respect to the authority to fix wages conferred by Section 15(I)(c), and that Firefighters I and II erred in holding to the contrary.
Firemen maintain the Commission's reliance upon Forbes is misplaced because Forbes held that Firefighters II was inapplicable in Forbes because Forbes found that ultimate authority for pay raises for state employees rests in the State Commission whereas Firefighters II held final authority for pay plans for City employees rested in the City.
Firemen argue that Firefighters II is further distinguishable from Forbes in that the former held Acts 55 and 57 are supplemental and do not contravene Section 15 (P)(6), whereas Forbes held Act 33 of 1970 is not supplemental and in violation of Section 15(P)(6). It is Firemen's position that the authority of the Commission in matters of pay is purely that of recommendation. This argument is based first on the holding in Firefighters II. Next, it is predicated on the ground that the language of Section 15(I)(6) and (7) itself conveys to the Commission only the power to recommend, and Section (6) expressly provides pay and hours of work plans do not become effective until approved by the City governing authority. Firemen also suggest that Acts 55 and 57 do not violate Section 15 because Section 15(P)(6) continues in effect all existing laws relative to State and City Civil Service, and reserves to the legislature authority to amend or repeal such laws and adopt amendments or new laws which are supplementary and do not conflict with Section 15. It is contended that Acts 55 and 57 are supplementary laws not in conflict with Section 15, consequently, they are valid. Lastly, Firemen argue that Acts 55 and 57 do not conflict with Section 22 (The New Orleans Home Rule Charter) because said acts are general laws, and Section 22 expressly bars the City from exercising any authority contrary to a general state law.
We find the Commission's position well taken. We agree that Section 15 vests the Commission with the same authority regarding pay schedules for City Classified Employees as it does the State Civil Service Commission with regard to pay schedules for State Classified Employees. We are also of the view that Forbes correctly held no pay plan can be approved by the State contrary to one established by the State Civil Service Commission, notwithstanding such a plan does not become effective for the State until approved by the Governor. That the Governor must approve a State plan, and the City approve a City plan before either can become effective, does not diminish or detract from the authority of the State or City Commission to adopt and enforce such plans. Neither does it mean that either the State or City can implement such a plan contrary to one recommended and established by the State or City Commission. Where such plans have been established, as is the case here, neither the State nor City can approve or implement a contradictory schedule. The patent purpose of Section 15 is to insure uniform treatment of all similarly classified employees in the State and municipal civil service systems provided for therein. To avoid discrimination and favoritism, to promote efficiency of governmental operation, and to encourage promotion based on merit, the electorate, by adoption of Section 15, has placed certain aspects of State and municipal classified employment beyond the pale of state and local governmental control.
Insofar as it relates to the case at hand, our review of Firefighters I discloses *144 the decision merely held that where the Commission had not recommended an hours of work schedule, the City was free to adopt one on its own. With this determination, we agree. We note dicta in Firefighters I to the effect that the City must approve a work schedule recommended and adopted by the Commission. We deem this holding a correct interpretation of Section 15.
Firefighters II involved three suits by firemen against the City Council, namely: (1) an action to compel implementation of Act 57 of 1968 ordering increased vacations with pay for firemen; (2) a suit to mandamus the City to appropriate funds to implement Act 55 relative to minimum salaries of firemen, and (3) an action to force the City to effectuate the minimum salary schedule for firemen provided by Act 55. The City plead unconstitutionality of Acts 55 and 57 on the same grounds urged here. Relying on Firefighters I, the Court of Appeal in Firefighters II held the Commission's authority to fix pay schedules was the same as that pertaining to work hours, namely, limited to recommendation only, the final authority in this regard resting in the City Council. On this basis, Firefighters II mandated the City to implement Acts 55 and 57. Firefighters II distinguished Sewerage and Water Board of New Orleans v. Barnett, La.App., 225 So.2d 381, which involved validity of a pay plan adopted by plaintiff Board for the members of its department alone where the City Council failed to approve a plan submitted by the Commission for all City Classified Employees. After the Sewerage and Water Board adopted the plan for its employees, the City approved said plan. Barnett held a plan adopted by one department with City Council approval was invalid in violation of Section 15, which prohibits discrimination against similarly classified employees. Firefighters II distinguished Barnett on the ground that in Firefighters II, all members of the same class, namely, firemen, would benefit equally. We refused writs in Firefighters II.
Firefighters III was a proceeding by Firemen to have the City adjudged in contempt for failure to implement the minimum pay and vacation schedule for firemen held valid in Firefighters II. As regards the suit for vacation pay, the trial court held the City was not in contempt. In the suit involving longevity and minimum salaries, the trial court held the City was in contempt, but not willfully so. All parties appealed. On appeal, the Court of Appeal affirmed the judgment holding the City free of contempt in the suit involving vacations. The judgment holding the City in contempt in the longevity and minimum salary action was reversed on the ground that willful disobedience is an essential element of contempt without which there can be no conviction of a constructive contempt. The Court of Appeal remanded the longevity and minimum salary cases to the trial court for the setting of a reasonable time in which the City could comply or face contempt proceedings. All parties applied for writs to this court.
Firefighters III is germane herein only in that it held Firefighters II was final as to the parties therein (Firemen and City) on the basis of res judicata.
Having reconsidered Firefighters I, II and III, we conclude these decisions are erroneous insofar as they might have held or intimated that the authority of the Commission is limited to the power of recommendation in matters involving pay plans and the working hours of municipal civil service employees. We find that the Commission is vested with power and authority to adopt, fix, establish and enforce pay plans governing wages and working hours of all City Civil Service Employees, which plans, when duly adopted by the Commission, are binding upon the City. To the extent that Firefighters I, II and III may have held or intimated the contrary, said decisions are hereby overruled.
We find further consideration of Forbes, above, to be in order. In Forbes, we declared *145 unconstitutional Act 33 of 1970, which provided minimum salaries for a specific class of State Classified Employees, namely, State Troopers. The Civil Service League sued to have the Act declared invalid in contravention of Article XIV, Sec. 15, in that it contravened the authority of the State Commission to fix the pay of all State Classified Employees, including State Troopers. It was urged in Forbes, above, that Act 33 of 1970 was supplementary in nature, and therefore valid pursuant to Section 15(P)(6). We rejected this contention on the ground that the statute was not supplementary in nature, but in direct conflict with the ultimate authority vested in the State Commission to fix salaries of Classified State Employees pursuant to Section 15(I) (c). In Forbes, above, we distinguished Firefighters II on the ground that, as regards state employees, the authority of the State Commission to fix salaries is ultimate, whereas Firefighters II held ultimate authority with regard to the pay of City employees rested in the City Council. In making this distinction in Forbes, we find we were in error. To the extent of said distinction, Forbes is hereby overruled.
Regarding Firemen's contention that Acts 55 and 57 are supplementary in nature, we now find no basic difference or distinction between Act 33 of 1970 and Acts 55 and 57 of the Extra Session of 1968. Acts 33 and 55 both attempt to establish a pay plan for employees of a classified system contrary to exclusive authority granted to the State Commission in the first instance, and the City Commission in the latter. Act 57 establishes a vacation plan for a select group of employees of the City Civil Service System in contravention of the exclusive authority vested in the City Commission in that particular area. As we held in Forbes with regard to Act 33 of 1970, we find that Acts 55 and 57 exceed the authority retained by the legislature under Section 15(P)(6).
Based on the language in Section 15, Firemen contend the Commission's power extends to recommendation only because: (1) Section (I)(c) provides that a pay plan for the City shall become effective only on approval of the City governing body; (2) Section (I) (6) does not confer upon the Commission authority to fix hours of work, but merely to recommend, and (3) Section (I)(c) provides that, in the adoption of a pay plan for State Classified Employees, difference in pay in private business and industry and the scarcity of applicants in different areas of the state may be considered in fixing different pay in different areas, but no such authority is granted City Commissions. We find no merit in any of these arguments. We held in Forbes that, with regard to State Employees, the authority of the State Commission is ultimate despite the need for approval by the Governor. Section 15 confers the same power and authority on the City Commission. Insofar as Section 15 (I) (6) relates to hours of employment, we note that said provision recites: "establishing and recommending hours of work", and requires approval of the Governor as regards a state plan and approval of the city governing authority with respect to a city plan. As hereinabove noted, Section 15 must be interpreted in the light of all its provisions. Insofar as Section 15 is concerned, we find that it vests in the State and City Commissions all powers not reserved to the legislature pursuant to Section 15(P) (6). Construed with the vesting authority contained in the opening sentence of Section 15 (I), subparagraph (6) thereof vests the Commission with power to fix binding pay plans from which the City may not deviate. That Section (I)(c) allows the State Commission to consider differences in pay in private business and industry and other factors which may vary in different parts of the state, in fixing salaries of State Classified Employees, is a matter of no operative effect in this instance. This provision merely recognizes that regional problems may exist in different *146 parts of the state depending upon varying economic circumstances. An individual municipality does not face such problems.
Firemen's last contention on constitutionality is that Acts 55 and 57 are general laws, and therefore binding on the City pursuant to the Article XIV, Section 22, provision that the City shall not exercise any power inconsistent with general law. In part, this argument is based on an analysis of general statutes dealing with firemen and policemen, (particularly firemen), which are said to indicate legislative intent to prefer employees in these categories. The Commission urges that Section 15(I) (6) and (c) vests exclusive authority in the Commission as regards to pay and work hours of City Classified Employees, and that these provisions are of equal dignity with Article XIV, Sec. 22. It thus appears there is a need to reconcile these provisions.
Constitutional provisions are interpreted by the same rules as are other laws. Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111.
In the event of conflict or inconsistency between different sections of the Constitution, they should be construed in such manner as to allow each to stand and be given effect, if possible. Meyers v. Flournoy, 209 La. 812, 25 So.2d 601.
Constitutional provisions should be so construed as to give effect to the purpose indicated by a fair interpretation of the language used. State ex rel. Fernandez v. Feucht, 182 La. 134, 161 So. 179.
Positions of articles and related articles in the Constitution, their source and history and development or changes in application of the articles are important considerations in their interpretation and application. Civil Service League v. Forbes, 258 La. 390, 246 So.2d 800.
Where, however, constitutional intent is evident and explicit from language used, the court may not consider a history of constitutional prohibition and may not, by considering separate but related constitutional provisions, arrive at a determination or construction which impairs the effectiveness or distorts the manifest meaning and purpose of related constitutional provisions. Public Housing Administration v. Housing Authority of City of Bogalusa, 242 La. 519, 137 So.2d 315.
It is of some significance, but not necessarily controlling, that Section 15 of Article XIV was approved by the electorate on November 4, 1952, subsequent to approval of Section 22 of Article XIV, on November 7, 1950.
In this instance, we rely, however, principally on the ground that Article XIV, Section 15, discloses clear, unmistakable intent to vest in the Commission sole and exclusive authority to establish, supervise and enforce a system of civil service for the City, free of legislative interference save for the right reserved to the legislature pursuant to Section 15(P) (6) to amend or repeal existing laws relating to City Civil Service, provided such amendments or new laws are merely supplementary and do not conflict with Section 15. To interpret Article XIV, Section 22, as contended by Firemen is to write out of the Constitution the mandatory language of Section 15 vesting the Commission with power to adopt rules having the force and effect of law in the Civil Service field. It would also completely negate the expressly conferred authority of the Commission to establish and adopt rules and plans fixing the pay and hours of employment of City Civil Service Employees. Construing the provisions together, we find that, insofar as City Civil Service is concerned, Section 15 is a limitation upon Section 22. We hold, therefore, that the provision of Section 22 subjecting the City to all general laws of the State is inferior to Section 15 *147 (P)(6), which retains existing laws relating to Civil Service and authorizes legislative amendment and repeal thereof, and the adoption of new laws, subject to the restriction that such repeals, amendments or adoptions are supplementary and not in conflict with Section 15.

PROSPECTIVE OPERATION OF UNCONSTITUTIONALITY
Relying upon Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Chicot County Gravity Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); Great Northern R. Co. v. Sunburst Oil and Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1931), the Commission maintains a pronouncement of retroactive unconstitutionality herein may be decreed without violation of any constitutional provision, Federal or State.
The decisions of the United States Supreme Court on the subject recognize that in instances of courts holding laws invalid, or reversing former decisions, the basic problems are primarily those of due process, vested rights and the finality of acts and contracts performed and entered into pursuant to laws which have been previously adjudged valid or decisions of courts which have become final. In this area, the highest Federal Court has evolved the rule that the Federal Constitution has no voice in the matter; that in overruling a statute or decision, a State court may do so either prospectively or retroactively, without in either case running afoul of any Federally guaranteed protection in the realm of due process or vested rights. See Great Northern R. Co. v. Sunburst Oil and Refining Co., above.
The cases cited by the Commission stand for the proposition that the retroactive or prospective application of decisions overturning state statutes and prior court decisions is a matter of state rather than Federal constitutional law. They do not mandate either result, and do not support the conclusion that retroactive application is mandatory. To the contrary, the case most similar factually to that at bar makes a persuasive argument that a subsequent finding of unconstitutionality should not be applied retroactively to overturn a final judgment. See Chicot County Gravity Drainage District v. Baxter State Bank, above.
In Chicot, the plaintiff bank was the holder of revenue bonds issued by the defendant drainage district. During the depression, the drainage district defaulted on its bonds. The district petitioned the U.S. District Court for authority to reorganize under the Municipal Dept. Readjustment Act of 1934, 48 Stat. at L. 798, chap. 345. Bondholders, including the bank, participated in the proceeding under which all claimants were given a period of one year to file claims with the clerk of the District Court. The decree stipulated that unless a claim was made within the one year period, it would be forever barred. The decree further provided for the cancellation of the old bonds and the issuance of new bonds to replace them.
More than one year later, the bank sued on their bonds, which had never been presented to the clerk of court. The drainage district pleaded the judgment of the district court in the reorganization plan as res judicata. The bank demurred to the answer, and pleaded that the act of Congress under which the reorganization had been conducted had been declared unconstitutional by the Supreme Court in a proceeding conducted subsequent to the reorganization. In that context, Mr. Justice Hughes stated, for a unanimous Court:
"The courts below have been proceeded on the theory that the Act of Congress, having been found to be unconstitutional, *148 was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. (Citations omitted). It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration.
"The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified." 308 U.S. at 374, 60 S.Ct. at 318.
The Supreme Court then held the doctrine of res judicata would be applied, as the bank was a party to the earlier proceedings, and failed to raise the constitutional issue at that time.
Here, however, res judicata is not applicable to the Commission since it was neither a party nor privy of a party to the former actions. The question here is what effect will be given the judgment obtained by Firefighters under the statutes which are now held invalid. In other words, we must decide whether the Acts will be declared null retroactively, thus divesting the rights and interests accrued thereunder, or whether we will declare the nullity prospectively and thus allow enforcement of all such rights accrued until the effective date decreed herein.
The Commission asserts that unless subject statutes are declared invalid retroactively, the City fisc will suffer irreparable harm, and that members of the city fire department will receive preferential treatment not accorded other civil service employees. Conversely, Firefighters maintain they have a valid final judgment declaring their entitlement to the benefits provided by subject legislation. It is conceded by the Commission that some of the benefits provided by Acts 55 and 57 have been paid.
We are of the view that final judgments should not be declared null retroactively save for the gravest of reasons such as the prevention of gross injustice or the elimination of unconscionable inequity. We find no such compelling reason in this instance.

DECREE
It is therefore ordered, adjudged and decreed that the judgment of the Court of Appeal, Fourth Circuit, declaring Acts 55 and 57 of the Extra Session of 1968, to be constitutional, is hereby annulled, reversed and set aside insofar as said statutes purport to apply to the City of New Orleans. In contravention of La.Const. Art. XIV, Section 15(I) (6) and (c).
It is further ordered, adjudged and decreed that the judgments of the trial court and Court of Appeal denying the request of the Civil Service Commission of the City of New Orleans for a permanent injunction herein, be and the same are hereby reversed and a permanent injunction granted herein enjoining the City of New Orleans from implementing Acts 55 and 57 of the Extra Session of 1968, subsequent to the date of this decree.
*149 It is further ordered, adjudged and decreed that all costs of these proceedings be paid by Intervenor, the New Orleans Firefighters Association Local 632, AFL-CIO.
Affirmed in part, reversed in part, and rendered.

ON APPLICATIONS FOR REHEARING
PER CURIAM.
The City Council of the City of New Orleans has applied for a rehearing herein contending Acts 55 and 57 of the Extra Session of 1968, should be declared null retroactively. It is suggested that subject statutes should be voided retroactively to preclude payment of any benefits thereunder which were not actually paid prior to January 21, 1974, the date of the original decree herein. It is suggested that longevity rights accrued under Act 55, and not actually implemented or enforced prior to January 21, 1974, should be abrogated and denied.
Firefighters have filed an "Application for Rehearing and Request for Clarification and Per Curiam Decision". This application does not question our declaration of unconstitutionality of the statutes involved. It seeks clarification of our initial decree. Firefighters note that our original opinion provides that all rights vested pursuant to the prior judgments are retained and preserved until January 21, 1974. However, Firefighters observe that our decree leaves doubt regarding the mechanics of enforcement of those rights and interests after January 21, 1974, inasmuch as the City has not yet complied with the judgment in the prior action involving longevity pay for Firemen. It is further suggested that unless the Court's position is made absolutely clear, additional litigation may be required to resolve the uncertainties noted.
The Civil Service Commission of the City of New Orleans opposes both applications. The Commission maintains that the judgment merely holds that benefits actually paid pursuant to the stricken statutes were not retroactively null. This interpretation, according to the Commission, precludes enforcement of longevity rights pursuant to Act 55 which, if allowed, would result in gross injustice by favoring Firemen over other municipal employees. The Commission argues that the decision holds that any accrued benefits not actually received, or any longevity pay or other longevity rights or benefits not actually paid or enforced before January 21, 1974, are foreclosed under our declaration of nullity.
We pretermit consideration of the procedural issue raised by Firefighters respecting the City's right to apply for a rehearing. Assuming, arguendo, the City may properly apply for a rehearing herein, we find all arguments in support thereof were considered and disposed of in our original opinion.
We disagree with the interpretation placed on our initial decree by the Commission. We intended therein to retain and preserve for Firemen and Firefighters all rights, privileges and benefits arising under Acts 55 and 57 of the Extra Session of 1968, by virtue of the judgments rendered in Firefighters I, II and III. We further intended that all such rights remain vested in Firefighters, and all sums due and owing as ultimately determined, and which were not paid, may be paid subsequent to January 21, 1974. We further intended that all longevity pay, rights, credits and benefits accrued, but not actually paid or enforced before January 21, 1974, could be paid or enforced thereafter. Finally, we intended that Acts 55 and 57 of 1968 be inoperative and confer no rights after January 21, 1974.
The applications for rehearing are denied.
MARCUS, J., recused.