KLEES, Judge.
This suit was for a Declaratory Judgment instituted by the State of Louisiana, the Department of Natural Resources and the Louisiana State Mineral Board. (Hereinafter referred to as the State). Petitioners were seeking to have themselves declared the owners of those portions of the bed and bottom of Lake Pontchartrain situated within the territorial limits of the “Lakefront Improvement Project” and under the jurisdiction of the Orleans Levee Board (hereinafter referred to as the Levee Board) not filled in or reclaimed by the Levee Board. The State further sought recognition of its ownership of the mineral rights to those portions above described and in addition to those areas actually filled in or reclaimed by the Levee Board pursuant to its grant of authority. The Levee Board answered and reconvened seeking recognition of its ownership of the land and minerals within its jurisdiction. The matter was submitted to the Trial Court upon Stipulation of Facts and Exhibits and judgment was rendered in favor of the State except as to those lands already filled in or reclaimed by the Levee Board. It is from this judgment that the Levee Board appeals.
The issue presented on appeal is whether Article 16 § 7 of the 1921 Constitution granted title in and to the bed and bottom of Lake Pontchartrain within the territorial limits of the Lakefront Improvement Project to the Levee Board. We conclude that it did and for the following reasons we reverse the judgment of the trial court in part and affirm in part.
The area of land in dispute is that contained in the grant of state lands made to the Levee Board in Article 16 § 7 of the 1921 Constitution, as amended by Act No. 106 of 1922 and Act No. 292 of 1928, now enacted as statute in La.R.S. 38:1235.1 et seq. Article 16 § 7(a), as amended in 1928, *1315 defines the territorial limits of the lakefront improvement project and thereby the jurisdiction of the Levee Board as,
“... along, over and on the shores, bottom and bed of Lake Pontchartrain in the Parish of Orleans from its western boundary to the boundary line separating township 11 south range 12 east, from township 11 south, range 13 east, at a distance not to exceed three miles from the present shore line, as the said Board may determine, and along and on the shores adjacent to said Lake and along the canals connected therewith; ...
The general powers of the Levee Board are enumerated in Article 16 § 7(a) as follows:
“The Board of Levee Commissioners of the Orleans Levee District shall have and exercise all and singular the powers now conferred upon said Board by law, and exclusive right, jurisdiction, power and authority to locate, relocate, construct, maintain, extend and improve levees, embankments, seawalls, jetties, breakwaters, water-basins, and other works in relation to this project, and to conduct all dredging operations necessary in connection therewith and/or incidental thereto."
(emphasis supplied)
Article 16 § 7(h) states:
“To enable the said Board to perform the work herein provided for and to assist in defraying the cost and expenses thereof, and to carry out the purposes of existing laws and this Article of the Constitution, the State of Louisiana hereby grants and releases to said Board the title of the State in and to all public property necessary for the purposes hereof and all lands reclaimed or filled in within any levee embankments, slopes, retaining walls, sea walls, and breakwaters, constructed hereunder and in and to all lands lying within the territorial limits of said project and hereby releases said land from any public trust or dedication and said Board shall have jurisdiction, power and authority to sell and lease, or otherwise dispose of such portion of the lands reclaimed and other property acquired for the purpose of said improvement, except the lands herein required to be dedicated by it for public use, together with any building, improvements or other works constructed thereon, under such terms and conditions and by such methods as said Board may deem proper....” (emphasis supplied)
The State asserts that it could not have granted to the Levee Board title to the bed of Lake Pontchartrain and to the minerals under it as it would have been a prohibited alienation under Article 4 § 2 of the 1921 Constitution. The case of State v. Grace, 161 La. 1039, 109 So. 830 (La.1926) and the cases that follow it do not support the State’s position. In Grace, the Tensas Basin Levee District sued to have the state lands granted to it certified by the state land office and state auditor 37 years after the act granting it was passed. The grant of state land in question also contained no express reservation of the minerals, and the State asserted that the grant violated Article 4 § 2. The court said,
“We think that the auditor and the register are in error when they say that the constitutional provision, cited, repeals, even partially, Act 103 of 1892, in so far as relates to the making of the grant, made in that act, or that it revokes to any extent that grant. The Tensas Basin Levee District was created and organized by the state as a means of discharging its duty to protect the lands in said district from inundation. The district is a state agency, created and continued in existence by the state with the foregoing purpose in view. The state, should it transfer the land to the district, including the mineral rights, in accordance with the grant made by it, would not be parting with the property within the meaning of the constitutional section cited, but would only be placing it under the control of one of its agencies for the purpose of constructing and maintaining levees. The land would, to all practical intents and purposes, still be the property of the state. The district could not sell it without reserving itself the mineral rights, *1316 for the reason that its creator, for whom it holds, could not do so. We see no reason, therefore, in so far as the section of the Constitution, cited, is concerned, why the auditor and the register should not execute the conveyance.” Grace 109 So. at 831-832.
The grant of state lands to the Orleans Levee District does not contain a reservation of the minerals to the State. As this is not a prohibited alienation within the meaning of the Constitution, we would agree with Justice Dixon’s holding in Arnold v. Board of Levee Commissioners, etc., 366 So.2d 1321, 1324 (La.1978), wherein he stated that, “Article 16 § 7(h) of the Louisiana Constitution of 1921 vested in the Orleans Levee Board all rights formerly held by the state to the bed and shores of Lake Pontchartrain within designated territorial limits...” (emphasis supplied). Thus this grant would be in accord with the broad powers given to the Board for the development of the lakefront area for flood protection.
The State asserts further that in the event that the transfer of title to the Board was not prohibited, that the section was intended to grant title only to those lands actually reclaimed by the Levee Board. This position might be tenable if the sole purpose of the act was for reclamation of the bed of the Lake, but the Levee Board and the Lakefront Improvement Project were to accomplish more than reclamation. Great discretion was given to the Levee Board as regards this ongoing project of protecting the city from inundation by the waters of Lake Pontchartrain. It was within their discretion to establish a front line of development within the 3 mile territorial limit and the Article does not say that once such a line is established that title to any remaining land not reclaimed within the territorial limits will revert to the State. The State attempts to interpret the Article in that manner by reading into it an intent to deny the Board any jurisdiction once a front line is established within the 3 miles. They use the prohibition in Article 16 § 7(h) against any further reclamation or construction once the front line is established which applies to both the State and the Levee Board. This interpretation supposes 1) that once a front line was established the purpose of the Article was fulfilled, and 2) that the singular purpose of the Article was reclamation of the bed of the Lake. Article 16 § 7(a), quite to the contrary, enumerates power and authority which go beyond the act of reclamation. The Article also states that the grant of title was to enable the board to perform their functions and to defray the costs and expenses of the project.
The Legislature certainly had the ability to make any contrary intent more clear in this constitutional amendment as demonstrated in Article 14 § 38 of the 1921 Constitution which authorized public improvement districts for Jefferson Parish.
Article 14 § 38(d) states in pertinent part,
“To enable the said districts to perform the work herein provided for and to assist in defraying the cost and expenses thereof, the State of Louisiana, acting by and through the Register of the State Land Office, is hereby authorized, empowered and directed to grant to districts now or hereafter created in accordance herewith, the title to all property owned by the State of Louisiana, or the title to which stands in the name of the State, and all property which, by its nature, situation and location, is not susceptible of private ownership under the present laws and Constitution of the State, and which land is to be reclaimed or filled in within any levee embankments, slopes, retaining walls, seawalls, and breakwaters to be constructed hereunder; provided, however, that the mineral rights on any and all of said lands shall be reserved to the State of Louisiana.”
This is not the language used in the Article before us, though the powers and purposes of each were almost identical.
Article 16 § 7 makes no mention of any divesting of title by certain acts of the Levee Board or that there will be divestiture upon failure to reclaim.
The grant of title to the state land in question does not appear to us to be ambig *1317 uous. The standard to be applied interpreting constitutional provisions is enunciated in Barnett v. Develle, 289 So.2d 129, 146 (La.1974),
“In the event of conflict or inconsistencies between different sections of the Constitution, they should be construed in such manner as to allow each to stand and be given effect, if possible. Citing Meyers v. Flournoy, 209 La. 812, 25 So.2d 601.”
and,
“Constitutional provisions should be so construed as to give effect to the purpose indicated by a fair interpretation of the language used, citing State ex rel, Fernandez v. Feucht, 182 La. 134, 161 So. 179.”
We find that a fair interpretation of the language of Article 16 § 7 leads to the inescapable conclusion that a grant of title in and to all lands lying within the territorial limits of the project was made to accomplish the many important and continuing purposes of the Board and any divestiture of title would be better accomplished by legislative means. Until such time as the Legislature institutes the proper provisions to divest the Levee Board of title they continue to act as an agent of the state having no greater powers to alienate the bed and bottom of the Lake than would its sovereign the State. The bed and bottom of the Lake remain insusceptible of private ownership despite title being vested in an agency of the State. Accordingly, that portion of the judgment declaring and recognizing the State as owner of that portion of the bed and bottom of the Lake not reclaimed or filled in by the Levee Board and, declaring the State to be the proper authority to grant leases for the development of the mineral resources of that portion of the bed and bottom of the Lake not reclaimed or filled in is reversed and we herein declare the Orleans Levee Board to be owner of that land along, over and on the shores, bottom and bed of Lake Pontchartrain in the Parish of Orleans from its western boundary to the boundary line separating township 11 south range 12 east, from township 11 south, range 13 east, at a distance not to exceed 3 miles from the present shoreline, as the said Board may determine, and along and on the shores adjacent to said Lake and along the canals connected therewith.
REVERSED IN PART, AFFIRMED IN PART.