GULOTTA, Judge.
Local 632 of the New Orleans Firefighters Association (Union) filed this action against the City of New Orleans (City), and the Civil Service Commission (Commission) seeking a declaratory judgment ordering the Commission to calculate overtime benefits to firemen not only on their city base pay as determined by the Commission, but on the sum of their base pay and supplemental pay provided by state statute. From a judgment declaring that overtime pay “is to be and should be calculated and computed on the combined basis of both base pay and state supplemental pay as *753 provided by LSA-R.S. 33:2000(A) et seq.” and that the supplemental pay statute is “applicable to and enforceable against the Civil Service Commission of the City of New Orleans in its determination, calculation and computation of overtime pay”, the Commission and the City have appealed. We affirm.
BACKGROUND
The pertinent City Civil Service rules provide that overtime compensation for eligible fire personnel is to be set “at the rate of time and one-half of the employee’s regular hourly base rate of pay. ...” [1] The Commission has long taken the position that state supplemental pay to firemen afforded by LSA-R.S. 33:2002(A)[2] is not to be added to the base rate of pay in computing their overtime. Both the City and the Union, on the other hand, feel that the state supplement should be included. The instant suit was filed in the wake of our earlier decision, Civil Service Com’n., Etc. v. Rochon, 374 So.2d 164 (La.App. 4th Cir. 1979), where the Commission had sought to enjoin the City from taking action on its own initiative to include the state supplement in the overtime calculation. In ordering the trial court to issue an injunction against the City, we held that the City could not ignore the Commission and independently set the amount of overtime pay. Following our decision in Ro-chon, the Union filed this class action to determine whether LSA-R.S. 33:2002(A) mandate the Commission itself to include the statutory supplement.
TRIAL COURT’S REASONING
In well considered and well articulated reasons, the trial judge stated, in pertinent part:
*754 “R.S. 22:2004(D) is a clear and concise legislative mandate requiring that overtime wages of firefighters be computed on the basis of combined base pay and State supplemental wages. Salary is defined as a recompense for services performed. As the Court noted in Maes v. City of New Orleans, 97 So.2d 856 (La. App.Orl. 1957), the additional pay granted by the State is not a bonus or gift but is a supplementation of salary. This Court knows of no law prohibiting the State of Louisiana from supplementing pay of New Orleans city firemen as added incentive to efficiently insure public safety and welfare.
The Civil Service Commission of the City of New Orleans is constitutionally created and vested with authority to establish a uniform pay plan for City Civil Service employees. (Art. X of the 1974 La. Const.) The Commission calculates overtime according to a formula set forth in Rule 4, Section 10, of its rules, but no Commission rule clearly sets forth the definition of “base pay” on which overtime wages must be calculated. In practice, the Civil Service Commission has calculated overtime wages based on wages paid by the City only, however, the Commission has not pre-empted the field of computation of overtime wages. To the contrary, its inaction has created a void which the State Legislature has chosen to fill by the enactment of R.S. 33:2004(D)_”
In this case a mandate from the Legislature, not in conflict with any Civil Service Commission rule, requires the use of State supplemental pay in computing overtime. The City agreed to pay overtime wages based on combined State and City pay and asserted its desire to do so at the trial of this case. The Civil Service Commission argued that, to permit any local governing authority to bind itself to pay wages outside of a Civil Service Commission plan would destroy the uniformity in pay plans which the Civil Service was created to establish. The Court is not impressed by this argument. In many instances, the State Legislature has paid additional compensation to certain classifications of Civil Service employees, which payments were theoretically in derogation of the claimed ‘uniformity’ established by the Civil Service Commission. The State has a legitimate interest in compensating a class of employees whose services provide invaluable insurance of domestic tranquility. In recognizing the value of their services through additional compensation, the State can further require that the added compensation constitute part of the base pay for computation of all employee benefits. Policemen and firefighters are in a unique position in that the overtime work which they do is mandatory. Therefore, the uniformity in pay scales achieved by the Civil Service Commission is preserved as to regular compensation for services rendered; additional compensation received by firefighters from the State injects some non-uniformity in overall pay received by City Civil Service employees, which is thoroughly justified by concepts of State police power; and, going one step further, basing overtime on combined City and State pay creates non-uniformity in the amount of overtime wages paid various classes of employees. The crucial point is that it is less essential to have uniform pay plans for base pay and overtime pay than it is to recognize that services rendered by some classes of employees justify non-uniformity.
There is no question that the Civil Service Commission can adopt rules which have the force and effect of law. There is some question as to whether their authority over pay plans for firemen is exclusive, but even assuming exclusivity, where they fail to consider State supplemental pay as part of base pay in computing overtime wages, where their rules are silent on that point and R.S. 33:2004(D) requires it, they must comply with that mandate. . .. ”
CONTENTIONS
Relying on our decision in Rochon, and the Louisiana Supreme Court’s opinions in Barnett v. Develle, 289 So.2d 129 (La. 1974) and La. Civil Serv. League v. Forbes, 258 *755 La. 390, 246 So.2d 800 (La. 1971), the Commission contends that it has exclusive authority under LSA-Const. Art. 10, § 10(A)(1)[3] to establish, supervise and enforce a civil service for the City free of legislative interference. The Commission argues, therefore, that there can be no “mandate” from LSA-R.S. 33:2002(A) to dictate a change in the Commission’s pay plan. According to the Commission, the trial court’s judgment effectively destroys the uniformity of the Commission’s Uniform Pay Plan and creates “inequity” to other classified employees who are in the same salary scale as firemen but who are not afforded state supplemental pay. Finally, the Commission contends that the trial court’s reliance on LSA-Const. Art. 6, § 14,[4] is “gratuitous” and manifestly erroneous since that constitutional provision was adopted in 1974 and has no historical connection to LSA-R.S. 33:2004(D),[5] which pre-existed it.
Although philosophically in agreement with the Union that the state supplement should be included in computing the firemen’s overtime, the City has also appealed contending the trial court erred in holding the Commission is mandated to consider the statutory supplement. It is the City’s contention that the overtime issue can be collectively bargained with the Union and that their agreement to include the state supplement should be enforced since the Commission has not enacted a rule clearly defining “base pay” for the purpose of calculating overtime. Alternatively, the City argues that if the Commission has exclusive jurisdiction over the computation of overtime then the Court should recognize that jurisdiction and order the Commission to consider whether or not to include the state supplement.
Because the arguments raised by the Commission and the City are interrelated, we consider them together.
MERITS
Before turning to the particular contentions raised, it is important to recognize, at *756 the outset, that LSA-R.S. 33:2002(A), provide a supplement to the firefighter’s municipal salary. It is “extra” or “additional” compensation paid by the State to municipal or parish fire department employees. LSA-R.S. 33:2004(D) manifests a legislative intent that the additional compensation be all inclusive in computing employee benefits. This provision states that the supplement:
“. . . shall be included in the calculation and computation of the total wages paid to the employee in the determination of employer contributions to any retirement system or pension fund of which such employee may be a member as well as in the determination of retirement eligibility and benefits which may accrue to the employee under any retirement system or pension fund, as well as in the determination of any other employee benefits, sick leave, or disability pay to which the employee might be entitled.”
Thus, in Hebbler v. New Orleans Fire Dept., 310 So.2d 113 (La.1975), it was recognized that state supplemental pay is part of a fireman’s salary within the meaning of LSA-R.S. 49:113 and must be reimbursed by the City where a discharged firefighter is ordered reinstated by the City Civil Service Commission.
The question whether a city civil service commission is mandated to include the state supplement in computing a fireman’s overtime benefits is one of first impression. However, in Latino v. City of Bogalusa, 295 So.2d 560 (La.App. 1st Cir. 1974), it was held that a state statutory supplement paid to policemen must be included by the City in computing their overtime, but Latino apparently did not involve civil service employees or consider the power vested in a city civil service commission by the Constitution.
It is true, as argued by the Commission, that LSA-Const. Art. 10, § 10(A)(1), vests the Commission with broad and general rule-making powers for the administration and regulation of classified civil service employees, including their compensation and disbursements and adoption of uniform pay and classification plans.
However, the same constitutional provision recognizes the Legislature’s power to enact laws supplementing these uniform pay plans. In pertinent part, LSA-Const. Art. 10, § 10(A)(1) provides:
“Nothing herein shall prevent the legislature from enacting laws supplementing these uniform pay plans for sworn, commissioned law enforcement officers of the Division of State Police, Department of Public Safety and regularly commissioned officers of the Enforcement Division of the Department of Wildlife and Fisheries.”
Even though a state supplement for municipal firemen is not specifically mentioned in the above constitutional provision, LSA-R.S. 33:2004(B) bears a connexity to LSA-Const. Art. 10, § 10(A)(1) in that the Department of Public Safety, which is specifically mentioned, prepares, signs and sends the supplemental pay checks to the eligible firemen.[6]
LSA-Const. Art. 10, § 10(A)(1), moreover, must be read in pari materia with the special provision for firemen and municipal policemen in LSA-Const. Art. 6, § 14, which provides:
“§ 14. Increasing Financial Burden of Political Subdivisions
Section 14. No law requiring increased expenditures for wages, hours, working *757 conditions, pension and retirement benefits, vacation, or sick leave benefits of political subdivision employees, except a law providing for civil service, minimum wages, working conditions, and retirement benefits for firemen and municipal policemen, shall become effective until approved by ordinance enacted by the governing authority of the affected political subdivision or until the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided. This Section shall not apply to a school board.”
Under this provision, laws providing for wages and working conditions for firemen and municipal policemen are specifically excepted from the requirement of prior local approval or legislative appropriation. Although it does not directly empower the Legislature to enact firemen’s pay statutes affecting civil service commissions, LSA-Const. Art. 6, § 14 is, nonetheless, a constitutional recognition of the unique status occupied by firemen and municipal policemen in the area of public safety. When this constitutional provision is read, together with LSA-Const. Art. 10, § 10(A)(1), it is clear that the rule-making power of the Commission concerning wages of firemen and policemen can be affected by state law supplementing their wages.
The constitutionality of LSA-R.S. 33:2002(A) is not at issue. The Commission in adopting its pay plan recognizes the existence of the supplemental pay but does not consider it in computing firemen’s overtime pay. If the firemen’s additional compensation under state statute can be accepted, in principle, as a constitutional exercise of legislative power that the Commission must abide by, then we see no reason why the very same supplement should not be included in the computation of overtime under the Commission’s rules. If the statutory supplement is constitutional, then, a fortiori, its mandatory inclusion in the computation of overtime does not violate the Constitution or infringe on the Commission’s powers. In fixing additional compensation for firemen, the Legislature is not usurping the Commission’s constitutional function of fixing compensation for civil service employees. The extra compensation is not in direct conflict with the Commission’s duly adopted plan but merely supplements it, as authorized by the Constitution.
The Commission’s constitutional authority has been recognized and interpreted in Rochon, Barnett, and Forbes, supra, cited by the Commission. Nevertheless, although we do not quarrel with the principles enunciated in the cited cases, they are distinguishable from our own and do not directly address the question confronting us.
In Rochon, the narrow issue before us was whether the chief administrative officer of the City of New Orleans had authority under law to alter methods of compensation and disbursements to Civil Service employees of the City as set by the Commission. In that limited context, we held that the Commission alone had the authority to set compensation in the form of salaries, including overtime of city employees with civil service status and that the City could not ignore the Commission and independently set the amount of overtime pay. We left open the question, however, whether the Commission was mandated to consider both city salaries and state supplemental payments as a basis for computing overtime pay, the issue now before us. Our decision in Rochon is not dispositive of our case.
In Barnett, the Louisiana Supreme Court held two state statutes, respectively fixing the salaries and annual vacation time of firemen in cities of 12,000 or more population, unconstitutional as applied to the City of New Orleans on the ground that the City Civil Service Commission, under LSA-Const. 1924, Art. XIV, § 15, had the sole and exclusive authority to establish, supervisé and enforce the system of civil service for the city, free of legislative interference, except for state supplementary laws not in conflict with the Constitution. In Barnett, however, the statutes held unconstitutional were specifically found not to be supplementary in nature. In our case, the 1974 Constitution recognizes the legislative right *758 to provide supplementary pay plans. The statute (LSA-R.S. 33:2004[D]) provides that the supplement be included in the calculation of employee benefits. Unlike Barnett, we find no legislative usurpation of a constitutional right.
In Forbes, a state statute providing minimum salaries for state troopers was declared unconstitutional as violative of LSA-Const. 1924, Art. XIV, § 15 by contravening the authority of the state civil service commission to fix the pay of all state classified employees, including state troopers. As in Barnett, the statute in question was not supplementary in nature, but rather in direct conflict with the Commission’s authority to fix salaries of classified state employees. Like Barnett, Forbes, was decided under the earlier Louisiana Constitution and did not concern the issue whether state supplemental pay should be included in the calculation of overtime for city civil service employees.
We are not persuaded by the Commission’s arguments that inclusion of the state supplement in the calculation of overtime will destroy the uniformity of the Commission’s pay plan. The plan itself, when it includes firemen and policemen, has long been non-uniform. Although aware that firemen have been receiving state supplements for several years, the Commission has never considered the supplements in setting pay scales of other employees in the same salary ranges as policemen and firemen. As a practical matter, the firemen, by receiving the state supplement, earn a greater income than the counterparts in civil service who receive no state supplement. Requiring the Civil Service Commission to include the state supplement in the calculation of overtime for firemen will not destroy “uniformity” that does not exist.
In affirming the trial court’s decision, we are not unmindful of the Civil Service Commission’s constitutional power to set compensation for employees. Nevertheless, LSA-Const. Art. 10, § 10(A)(1) should not be read so broadly as to allow a local body of commissioners, albeit in good faith, to prevent the application of a state statute supplementing firemen s pay. The Legislature, in its wisdom, has seen fit to supplement the compensation of firemen. The City has expressed its desire that the state supplement be included in the calculation of overtime for the firemen. The Constitution and laws of the State of Louisiana recognize the necessity of increasing firemen’s wages to protect the public. Under these circumstances, the rule-making authority of the Civil Service Commission should not be interpreted to thwart these expressed desires to further the public need.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.

. Rule IV, § 10.2(c) of the City Civil Service Rules provides:
“Non-exempt uniformed fire personnel who work a 48-hour work week shall receive overtime compensation at the rate of time and one-half the employee’s regular hourly base rate of pay for all hours worked in excess of 12 consecutive hours on a shift or 48 hours in a week. (Amended April 27, 1977 and effective February 26, 1979.)”
Rule IV, § 1.3 provides, further:
“The pay of all positions in the classified service shall be determined in accordance with the pay plan in effect and in accordance with the provisions of the Civil Service Law regardless of any provisions or appropriation for any different salary rate or mode of payment for any position. The Base Pay of those employees paid on a bi-weekly basis shall be computed by multiplying the appropriate monthly salary step in the salary range by twelve and then dividing this product by twenty-six. The Base Pay of those employees paid on a weekly basis shall be computed by multiplying the appropriate monthly salary step in the salary range by twelve and then dividing this product by fifty-two. (Amended April 27, 1977).”

. LSA-R.S. 33:2002(A) reads as follows:
“A. In addition to the compensation now paid by any municipality, parish, or fire protection district maintaining a fire department to any employee of such department, which term employee as used herein expressly excludes any person presently drawing a retirement or disability pension, secretarial and clerical employees, and mechanics which are not subject to The Municipal Fire and Police Civil Service Law, every paid, regularly employed employee who is paid not less than three hundred dollars per month from public funds, not including supplemental pay, as distinguished from part-time employees and volunteers, of such municipal, parish, or fire protection district fire department who are carried on the payroll of such municipal, parish or fire protection district fire department and every employee as defined herein who is paid from funds of the parish or municipality obtained through lawfully adopted bond issues or lawfully assessed taxes, either directly or through a board or commission set up by law or ordinance of the parish or municipality, shall be paid extra compensation by the state as follows:
(1) One hundred forty dollars per month for each such paid, regularly employed fire department employee at the completion of three months of service.
(2) One hundred eighty-two dollars per month for each such paid, regularly employed fire department employee who has completed or who hereafter completes one year of service.
(3) Two hundred twelve dollars per month for each such paid, regularly employed fire department employee who has completed or who hereafter completes three years of service.
(4) Two hundred forty-one dollars per month for each such paid, regularly employed fire department employee who has completed or who hereafter completes six years of service.

. LSA-Const. Art. 10, § 10(A)(1) reads as follows:
“Section 10. (A) Rules. (1) Powers. Each commission is vested with broad and general rule-making and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. It may make recommendations with respect to employee training and safety. Nothing herein shall prevent the legislature from enacting laws supplementing these uniform pay plans for sworn, commissioned law enforcement officers of the Division of State Police, Department of Public Safety and regularly commissioned officers of the Enforcement Division of the Department of Wildlife and Fisheries.”

. LSA-Const. Art. 6, § 14 reads as follows:
“Section 14. No law requiring increased expenditures for wages, hours, working conditions, pension and retirement benefits, vacation, or sick leave benefits of political subdivision employees, except a law providing for civil service, minimum wages, working conditions, and retirement benefits for firemen and municipal policemen, shall become effective until approved by ordinance enacted by the governing authority of the affected political subdivision or until the legislature appropriates funds for the puipose to the affected political subdivision and only to the extent and amount that such funds are provided. This Section shall not apply to a school board.”

.LSA-R.S. 33:2004(D) reads as follows:
“D. The additional compensation paid by the state to municipal or parish fire department employees as provided by this Subpart shall be included in the calculation and computation of the total wages paid to the employee in the determination of employer contributions to any retirement system or pension fund of which such employee may be a member as well as in the determination of retirement eligibility and benefits which may accrue to the employee under any retirement system or pension fund, as well as in the determination of any other employee benefits, sick leave, or disability pay to which the employee might be entitled. Amended by Acts 1967, No. 82, § 1; Acts 1978, No. 496, § 1.”

. LSA-R.S. 33:2004(B) provides:
“B. The mayors or parish officials of the respective municipalities or parishes shall forward the warrants to the secretary of the Department of Public Safety and, after obtaining approval of the board as approved in R.S. 33:2009 hereof, the secretary of the Department of Public Safety shall cause to be prepared and shall sign individual checks representing the amount to be paid out of state funds to each employee in accordance with the provisions of this Subsection. Each such check shall show the legislative appropriation from which payment is made and shall note that it represents additional compensation paid by the state under the provisions of this Subpart. The secretary shall deliver the checks to the individual employees in whose favor they are drawn, by mail, or by such other means as he shall determine.”