303 So.2d 511 (1974)
Herbert BAKER and Mrs. Gertrude Baker Paynter, Plaintiffs-Appellants,
v.
WHELESS DRILLING COMPANY, Defendant-Appellee.
No. 12438.
Court of Appeal of Louisiana, Second Circuit.
November 7, 1974.
Rehearing Denied, December 10, 1974.
Writ Refused January 10, 1975.
*512 Holloway, Baker, Culpepper, Brunson & Cooper by Bobby L. Culpepper, Jonesboro, for plaintiffs-appellants.
Cook, Clark, Egan, Yancey & King by Sidney E. Cook, Shreveport, for defendant-appellee.
Before BOLIN, PRICE and DENNIS, JJ.
En Banc. Rehearing Denied, December 10, 1974.
DENNIS, Judge.
This is the second suit by former owners of a mineral servitude for damages resulting from loss of the servitude through non-use.
Previously, the same plaintiffs, Herbert Baker and Gertrude Baker Paynter, sued owners of land in Lincoln Parish for judgment declaring that the Bakers' mineral servitude affecting the land had not prescribed. In the alternative, in the event prescription had occurred, the Bakers sought damages from Chevron Oil Company due to its negligence in failing to timely complete a voluntary unitization and pooling agreement and thereby prevent the running of prescription. The trial court rejected both demands and its decision was affirmed by both the Court of Appeal and the Supreme Court.
The record of that suit was not introduced herein, but the parties have referred us to the appellate decisions: Baker v. Chevron Oil Company, 245 So.2d 457 (2d Cir. 1971) and Baker v. Chevron Oil Company, 260 La. 1143, 258 So.2d 531 (1972). From these opinions we have gleaned the facts forming the background for this litigation.
It was conceded in that suit that, in order to interrupt prescription, production must have occurred prior to March 29, 1966 on the tract burdened by the Baker servitude or other land included with it in a production unit. In November, 1965, Wheless Oil Company, the Bakers' mineral lessee, started drilling operations on another tract located in the same section as the property subject to the servitude. Wheless drilled to a depth of 9,000 feet but without securing production. Subsequently, Wheless turned operations over to Chevron Oil Company which brought in a gas well on January 6, 1966.
In conformity with a condition of the drilling permit issued by the Department of Conservation, it was necessary for Chevron to form a production unit before it commenced actual, commercial production. Chevron's drilling program committee determined that all of the section, which contained both the new well and the property subject to the servitude, should be included in unitization. It then proceeded *513 to seek agreement of the lessees of property in the section to the formation of this unit. It drew up multiple originals of a declaration of pooling and unitization agreement, dated March 4, 1966, which were mailed to the other lessees, including Tenneco Oil Company, Southern Natural Gas Company and Wheless Drilling Company.
All of the lessees except two signed the pooling agreement in the early part of March, 1966. Southern Natural Gas Company did not sign until April 14, 1966, and Tenneco Oil Company did not sign until April 14, 1966. Their declarations were acknowledged by Chevron on May 9, 1966. All declarations, executed in counterparts, were filed in the conveyance records on May 12, 1966.
Both the Court of Appeal and the Supreme Court, in the first Baker case, found the fact that the pooling agreements were not signed by Tenneco and Southern until after April, 1966 to be decisive of the main demand. Since the mineral reservation prescribed for non-user on March 29, 1966 both courts held that the subsequent signing of the pooling agreement by Tenneco and Southern could not have a retroactive effect, so as to revive the already expired servitude.
In considering the Bakers' alternative claim for damages "for the alleged breach of duty by the lessee, Chevron" in failing to obtain the signatures and complete the unit prior to the end of the lease term, the Court of Appeal recounted the efforts made by Chevron's employees toward this end. Baker v. Chevron Oil Company, 245 So.2d 457, 460 (2d Cir. 1971). Then, it concluded there was "no negligence or dereliction of duty on the part of Chevron". Id. p. 461.
The Supreme Court, in affirming the decision on the alternative demand, stated:
"* * * This claim is based on the premise that an implied covenant of a lease is that `the lessee should do nothing to harm the interest of the lessor.' And they argue that `The evidence herein shows that the defendants did not use due diligence to obtain the execution of the pooling agreement.'
"Conceding solely for purposes of discussion, that plaintiffs' premise is correct, the contention must fail as it does not appear from the record that Chevron held a lease from plaintiffs. To the contrary, the testimony establishes that Wheless was plaintiffs' lessee. Therefore, Chevron was under no duty to rush the unitization through to protect plaintiffs' interest. In any event, our review of the record satisfies us that the Court of Appeal correctly found that the delays involved in completing the unitization were not caused by the negligence of Chevron." [Baker v. Chevron Oil Co., 260 La. 1143, 258 So.2d 531, 534 (1972)]
In the present case, the Bakers sued Wheless Drilling Company for damages for causing them to lose the mineral servitude. The specific acts and omissions of which Wheless was accused were set forth in the following paragraphs of the petition:
"-17-
"That defendant is liable unto plaintiffs in the amount of TWENTY THOUSAND AND NO/100 ($20,000.00) DOLLARS, for failure to be sure that all parties to the pooling and unitization agreement executed the same prior to March 29th, 1966.
"-18-
"That defendant breached its implied covenant contained in the lease that `the lessee should do nothing to harm the interest of the lessor.'
"-19-
"That defendant did not use due diligence to obtain the execution of the pooling agreement in question.

*514 "-20-
"That Wheless Drilling Company took no active efforts in being sure that the pooling and unitization agreement was executed prior to March 29th, 1966, and thus took no action to protect the interest of its lessors, thus breaching the provisions of the lease in question, all as will be more fully shown on trial hereof."
Wheless filed exceptions of res judicata and judicial estoppel based on the ground that the issues presented in this second suit by the Bakers were the same as presented in their first one involving the same cause of action for damages for failure to perfect the formation of a production unit. In support of the exceptions the defendant filed several documents which, together with the pleadings, afford us a clearer view of the nature of the present suit than we were able to attain of the first Baker case without the record therein and from the appellate opinions alone.
The evidence adduced in connection with the exceptions herein does not contradict but supplements and clarifies the facts found by the appellate courts in the first case. It now appears that on October 15, 1965, the Bakers granted to Wheless Drilling Company a mineral lease covering the property subject to their servitude. The lease was a standard oil, gas and mineral lease, except that it provided for a primary term expiring on March 29, 1966 and contained typewritten addenda which is not pertinent to our decision here. Then on December 22, 1965 Wheless, for a consideration of $1,000, by a written instrument, subleased to Chevron Oil Company an undivided 56.4097% interest in and to its lease from the Bakers. In the sublease Chevron did not assume any of Wheless' obligations to the Bakers under the lease.
After considering oral and written arguments, and after taking both exceptions under advisement, the District Court sustained the alternative plea of judicial estoppel. The plaintiffs have appealed.
In refusing to sustain the exception of res judicata, the trial judge was clearly correct. The three major requisites for application of res judicata are: (1) the thing demanded must be the same; (2) the demand must be founded on the same cause of action; and (3) the demand must be between the same parties in the same quality. LSA-C.C. Art. 2286. Since the first case involved a suit by the Bakers against Chevron Oil Company, and the present suit is by the same plaintiffs but against a different defendant, Wheless Drilling Company, the requisite identity of parties is absent, and the plea of res judicata was properly overruled.
For the same reason, the judgment of the District Court sustaining the plea of judcial estoppel must be reversed. However, we do not reach this conclusion as readily because the result here is dictated not by the clear provisions of statutory law, as in res judicata, but by an ill defined jurisprudential importation from the common law.
Although the application of the doctrine of judicial estoppel in Louisiana has been criticized, see McMahon, The Work of the Louisiana Supreme Court, 1957-58 Term, 19 La.L.Rev. 294, 390 (1959), questioned, see Tate, The Work of the Louisiana Appellate Courts, 1967-68 Term, 29 La.L.Rev. 278, 279 (1969), and soundly rejected by one Court of Appeal, Shell Oil Company v. Texas Gas Transmission Corporation, 176 So.2d 692 (La.App., 4th Cir. 1964); Rouseo v. Atlas Finance Company, 167 So.2d 495 (La.App., 4th Cir. 1964); Bordelon v. Landry, 278 So.2d 173 (La.App., 4th Cir. 1973), it continues to find acceptance in the opinions of the state's highest court.
In fact, the last three decisions by the Louisiana Supreme Court on the subject have presented as many different views of the doctrine. In California Company v. Price, 234 La. 338, 99 So.2d 743 (1957) the court held, "[E]ven if res judicata cannot be strictly applied the parties to this litigation are bound by judicial estoppel which *515 extends to every material allegation or statement made on one side in the prior Price case and denied on the other which was determined in the course of the proceedings." Id. at 747. In Williams v. Marionneaux, 240 La. 713, 124 So.2d 919 (1960) the court expressed the opinion "that a plaintiff's cause of action abates against the person secondarily liable when it is shown that he has already litigated with the tortfeasor or tortfeasors and they have been held to be without fault" and "[a]ccordingly, a plea in bar of judicial estoppel would have been appropriate procedurally." Id. at 922. And in the recent case of Barnett v. Develle, 289 So.2d 129 (La.Sup.Ct.1974) the court stated "that, while Louisiana does not apply the common law doctrine of res judicata to the extent that said doctrine encompasses all issues which may have been presented in prior litigation between the same parties, Louisiana nevertheless reaches the same result on the basis of judicial estoppel or waiver of rights." Id. at 138.
Fortunately, it is not necessary to a decision of the present case for us to attempt to chart the limits of judicial estoppel in the wake of these cases. Nor would it be useful for us to comment upon the desirability of the apparent continuing expansion of its ambit. For the requisite of judicial estoppel that is decisive in this case, an identity of parties, has remained clear and fixed in the Supreme Court cases and virtually all appellate decisions.
The Supreme Court, in Barnett v. Develle, supra, held "[J]udicial estoppel is generally applied only to parties to the prior actions or their privies." Citing Muntz v. Algiers & Gretna Street Railway Company, 116 La. 236, 40 So. 688 (1906); McKnight v. State, 68 So.2d 652 (La.App., 1st Cir. 1953); Williams v. Marionneaux, supra; Cauefield v. Fidelity & Casualty Company of New York, 378 F.2d 876 (5th Cir. 1967). By "privies" the courts have meant a person whose liability is purely derivative from the act of another person, or a person who is the primary actor in creating this kind of liability, such as in cases of employer-employee and lessor-lessee relationships. Barnett v. Develle, supra; Muntz v. Algiers & Gretna Street Railway Company, supra; McKnight v. State, supra; Williams v. Marionneaux, supra; Cauefield v. Fidelity & Casualty Company of New York, supra. Except in these instances of vicarious or derivative liability, the doctrine of judicial estoppel has only been applied in situations where the same parties were before the court in both proceedings. Olsen Engineering Corporation v. Hudson Engineering Corporation, 289 So.2d 346 (La.App. 1st Cir. 1973).
Although the plaintiffs are the same here as in the first Baker suit, Wheless was not a party therein nor "privy" to a party in the sense intended by the courts in discussing judicial estoppel. There was a contractual relationship between Wheless and Chevron created by the mineral sublease. However, this contract created no derivative or vicarious liability toward the Bakers upon which recovery was or could have been sought in either case. The petition in the present case does not state a cause of action against Wheless based upon any alleged acts or omissions of Chevron. The appellate opinions in the first Baker case make it reasonably clear that the alleged liability from which Chevron was exonerated did not arise from the alleged acts or omissions of Wheless. Inasmuch as judicial estoppel bars the normal assertion of rights, courts should apply the doctrine with caution. Barnett v. Develle, 289 So.2d 129 (La.S.Ct.1974); Cf. American Bank & Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (1967). Accordingly, we are constrained to resolve any doubt against application of the doctrine. Therefore, we conclude the two cases do not present a vicarious or derivative liability situation which would allow for a relaxation of the requisite that there be an identity of parties in order to invoke judicial estoppel.
For the above reasons, the judgment appealed from is affirmed insofar as it overruled *516 the exception of res judicata, and is reversed insofar as it sustained the exception of judicial estoppel. The case is remanded to the District Court for a trial on the merits. The costs of the appeal are assessed against the appellee. All other costs are to await a final determination of the merits.