I;WILLIAM H. BYRNES III, Chief Judge.
On March 22, 2001, the defendants were indicted by a grand jury for violations of La. R.S. 15:1303 [1], pertaining to interception and disclosure of wire, electronic, or oral communications.[2] Smith was charged with two counts pertaining to interception of a communication under subsection (A)(1), and disclosure under subsection (A)(3), and Armond was charged with one count of disclosure under (A)(3). The Office of District Attorney, Orleans Parish, was recused from the case and the Office of the Attorney General, State of Louisiana, became the prosecuting body. The defendants were arraigned and pled not guilty Ron May 4, 2001. The defendants filed a motion to quash, which was granted on June 20, 2002. The State appealed.

STATEMENT OF FACT

Assistant District Attorney Roger Jordan went to the House of Detention to *652 interview Brian Mathieu as a witness in the case of the murder of his cousin, Kevin Mathieu, by Raymond Laugand. An hour or so later, OIDP investigator Robert Smith, defendant herein, went to the House of Detention, also to interview Mathieu on behalf of Raymond Laugand. Smith testified without contradiction that he was retained by Laugand’s family. Jordan was still interviewing Mathieu. Jordan did not know Smith was present. Smith could hear Jordan and Mathieu talking through the closed door to the interview room. He taped the conversation with a tape recorder he happened to have in his possession, not one that had been provided by the prison. Smith then called Arcenious Armond, now his co-defendant herein, but who, at the time, was the defense attorney for Raymond Laugand in the murder case. Smith told Armond that he had heard Mathieu committing perjury and had taped the conversation. Armond told Smith to bring him the tape. At the Laugand trial, Armond attempted to introduce the tape, but the tape was ruled inadmissible.
The key portions of the record are the partial transcript of November 30, 2000, of the trial of Laugand, containing Armond’s representations to the court and Smith’s testimony concerning the recording; the supplemental police report; and the June 20, 2002 transcript of the motion to quash.
| ^ASSIGNMENT OF ERROR
Plaintiffs sole assignment of error can be reduced to the argument, as hereinafter explained, that Smith was in a “contrived position” when he overheard and recorded the conversation that resulted in Smith’s prosecution herein.
At the outset it is important to note that there can be no violation in the instant case of La. R.S. 15:1303(A)(3) unless there is a violation of La. R.S. 15:1303(A)(1), i.e., there is no violation of the use and disclosure prohibition unless there is first a violation of the interception prohibition.
In U.S. v. Carroll, 337 F.Supp. 1260 (D.D.C.1971), the court held that where a conversation in an adjacent hotel room could be heard in the defendant’s room by the unassisted ear, and the defendant recorded conversations by using a cassette-type recorder with a standard microphone no more sensitive than the human ear, the defendant could not be found guilty of interception of an oral communication under the federal statute, 18 U.S.C. § 2510, et seq. Significantly, the State does not disagree with the explication of the law found in Carroll.[3] The State merely tries to distinguish the facts of the instant case.
In Carroll there was no question of any contrivance by the defendant, and the defendant did not eavesdrop in a position where an individual would not normally be expected to be (referred to in cases as a “contrived position”), nor did he place any device in an unauthorized place. The court granted a motion to dismiss the indictments. The case involved an inconsequential partial overhearing through a connecting hotel room door of a competitor’s salesman.
|4The facts in Carroll are simple. While attending a convention in Washington, D, C., defendant Carroll was registered in a room without any knowledge of who was in the adjacent room. In fact, that room was being utilized by a business competitor as a hospitality suite for the convention. The rooms were connected by a door which was *653 closed and locked but which did not prevent conversations in the hospitality suite from being heard by the unassisted ear in the defendant Carroll’s room. Carroll recorded conversations emanating from the room. At least one conversation recorded was part of a business telephone conversation from the hospitality suite. Carroll made the recordings by using a cassette-type recorder with a standard microphone, a device that was an inexpensive model generally available to the public and no more sensitive than the human ear. Carroll and his corporate employer were indicted for the interception of oral communications. The company and two other individuals were charged with using, disclosing, and endeavoring to use and disclose these intercepted conversations. All of the defendants were charged with conspiring to intercept, to use and to disclose the oral communications.
The Carroll court stated:
In order for the interception of an oral communication to constitute an offense under the statute, three elements must be established. First, there must be a willful “interception,” defined as the “aural acquisition of the contents of any ... oral communication through the use of any electronic, mechanical, or other device,” 18 U.S.C. 2510(4). Second, the oral communication must be uttered by a person exhibiting an expectation that such communication is not subject to interception, 18 U.S.C. 2510(2). And, third, the communication must be “under circumstances justifying such expectation [that the communication is not subject to |Binterception].” Id. It is the third element on which the motion to dismiss focuses in this case.
The facts being undisputed, the Court is called upon to specify the factors that must be taken into account in determining whether the circumstances justified an expectation of privacy. [Emphasis added.]
Id., 337 F.Supp. at 1262.
The Carroll court went on to reject several subjective tests of an “expectation of privacy” as being too problematic in favor of objective tests:
An objective test would begin by determining whether in fact[4] the recorder heard the conversation unaided by any mechanical device. If such be the case, as it is in this instance, then the inquiry turns to whether the overhearing was contrived by the recorder in the sense that he placed his ear by trespass or otherwise, in an unusual or improper position. If, as in the present case, the recorder could and did hear unaided by an amplifying mechanical device and from an uncon-trived position, then it would appear that the Court should hold as a matter of law that the circumstances did not justify the expectation of privacy. [Emphasis added.]
[[Image here]]
This is a very narrow and unusual case. By stipulation, there is no question of contrivance by the recorder; he did not eavesdrop in a position where an individual would not normally be expected to be[5]. In addition, there is no question of augmentation of the overheard conversation by means of an electronic device more sensitive than the human ear or by a device in an unauthorized place in order to pick up what could not be heard easily by an uncontriving hearer. And, lastly, it is conceded that the individual who did the recording could and *654 did hear the conversation unaided by the mechanical device. If any of these issues were in doubt, factual questions would be present and, therefore, a trial might be necessary. It is only in the setting where there is no contrivance, no augmentation, and an admitted unaided overhearing that a purely objective test will be decisive. Thus the facts | fidemand as a matter of law that the Court hold there could not be an expectation of privacy under the circumstances of this particular case.
Thus the necessary third element to the crime of intercepting oral communications is missing. Since all the counts of the indictment depend upon the establishment of a private oral communication, all of the counts are defective. Defendants’ motion to dismiss the indictment, therefore, is granted.
Id., 337 F.Supp. at 1263-1264.
The Louisiana statute was modeled directly after the federal statute reviewed in Carroll. Great weight has been given to the interpretations of the federal act by courts of this state. Keller v. Armond, 98-844, 98-843 (La.App. 3 Cir. 12/23/98), 722 So.2d 1224. Significantly, as mentioned previously, the State does not disagree with the explication of the law found in Carroll. (See footnote # 3, ante.) The State only attempts to distinguish the facts of the instant case to show that Smith was in a “contrived position.”
The facts in this case are very similar to Carroll in that it was somewhat coincidental that Smith was outside the room when Jordan was interviewing Mathieu. Undoubtedly, there was a subjective expectation of privacy when Jordan interviewed Mathieu. Undoubtedly, there was a subjective “expectation of privacy” in Carroll, too, but the Carroll court rejected that as being too problematic a standard. It must be decided whether the expectation of privacy, viewed objectively, is justifiable under the circumstances. Kemp v. Block, 607 F.Supp. 1262, 1264 (D.C.Nev.1986). The expectation of privacy is one that society is prepared to recognize as reasonable. Id.
The reasoning in Carroll is applicable to this case. Smith could hear the conversation with his unaided ear and used no enhancing device. The State |7explicitly concedes that point in its brief. In fact, Smith did not even hold his ear or a glass to the door. Jordan and Mathieu were talking loud enough to be overheard. Smith testified without any attempt at contradiction that the voices that he overheard were loud and booming. Even where a person was where that person might ordinarily have an expectation of privacy, such expectation is not warranted when the person speaks too loudly. Holman v. Central Arkansas Broadcasting Co., 610 F.2d 542 (8 Cir.1979); Kemp v. Block, 607 F.Supp. 1262, 1265 (D.C.Nev.1985). For example, even in the proverbial “privacy of one’s home” society is not prepared to recognize as reasonable an expectation of privacy for words said so loudly that they can be heard, as the saying goes, by “the whole neighborhood.”
Applying the Carroll factors, we find that there is no question of augmentation of the overheard conversation by means of an electronic device more sensitive than the human ear. The State does not contend otherwise. Smith’s recorder being where he could lawfully be and hear cannot be said to have been placed there “in order to pick up what could not be heard easily by an uncontriving hearer.” Id., 337 F.Supp. at 1263. Smith, “the individual who did the recording could and did hear the conversation unaided by the mechanical device.” Id. The mechanical ear of the recorder is no different from the ear of a *655 listener with a precise memory. United States v. Santillo, 507 F.2d 629 (3 Cir.1975).
Smith was lawfully present in the hall. The presence of people in the hallway was neither unusual nor unexpected. On the other side of the hallway opposite the interview rooms were a series of phone bays, from which the only reasonable inference is that it was anticipated and expected that there would be a number of individuals in that hallway who might have need of telephonic services. In addition to those who might be using the phones, Smith testified without any |sattempt at contradiction by the State that there was another person waiting in the hallway at the same time he was. Smith guessed that this other person was “an attorney waiting to see a client.” There is no reason to believe that the presence of Smith and others merely waiting is in any way unusual, and the State does not suggest that it is. Thus it can be said, following the reasoning in Carroll, that Smith was not in a “in a position where an individual would not normally be expected to be.”
The State does not argue that Smith had no right to be in the hallway — a hallway consisting on one side of a series of doors opening into interview rooms and on the other side, a series of phone bays. Instead, the State’s argument is that-it was unnatural for Smith to be in that portion of the hallway opposite the door to the interview room where Jordan was interviewing Mathieu. However, implicit in the State’s argument is that it was appropriate for Smith to stand in the hallway opposite any other interview room, just not the one in question. This is obviously an untenable proposition. Also implicit in the State’s argument is the equally untenable proposition that it would have been appropriate for anyone else to stand opposite the door in question, i.e., implicit in the State’s argument is the suggestion that there would not have been anything wrong with anyone not interested in the matter to stand outside the door where they could overhear Jordan and Mathieu. The State does not point to any rule or regulation stipulating where individuals must stand in the hallway, upon which rule or regulation the occupants of a given interview room could base an expectation that no one would be in the hallway outside of the door. The fallacy of the State’s reasoning on this issue becomes even more obvious when applied to the facts in the Carroll case. Because it cannot be denied that Smith had a right to be in the hallway outside the interview rooms in |9the instant case, if we apply the State’s reasoning in the instant case to the Carroll case, it would lead to the absurd result that the hotel occupants in Carroll had an expectation of privacy that only applied to business competitors as though the walls of the hotel room could be expected to provide selective soundproofing.
The important thing in the instant case is that the State has conceded that Smith could hear the voices in the room unaided and without putting his ear up against the door. Had Smith sneaked past a guard to gain entrance to the hallway, or had he climbed up on a window ledge (had there been one), or had he used a recording device capable of picking up sounds inaudible to the human ear, the State would have a much stronger argument.
The fact that there 'may have been a prohibition against bringing a recorder into the facility without prior authorization is not germane to La. R.S. 15:1303, pursuant to which Smith was charged. The issue under the statute is whether the hearer was where he had a right to be and hear unaided by a mechanical device and whether the recording device could record more than the hearer could hear unaided. *656 As we find that Smith was where he had a right to be and hear (he is not required to wear earplugs) and his recorder could record no more than what could be heard unaided by the human ear (the State does not contend otherwise on appeal), we find no error in the judgment of the trial court. Accordingly, we find no merit in the State’s sole assignment of error and, therefore, affirm the judgment of the trial court.

AFFIRMED.

. La. R.S. 15:1303 provides in pertinent part:
Interception and disclosure of wire, electronic, or oral communications
A. Except as otherwise specifically provided in this Chapter, it shall be unlawful for any person to:
(1) Willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire or oral communication;
(2) Willfully use, endeavor to use, or procure any other person to use or endeavor to use, any electronic, mechanical, or other device to intercept any oral communication when:
(a) Such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
(b) Such device transmits communications by radio or interferes with the transmission of such communication;
(3) Willfully disclose, or endeavor to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this Subsection; or
(4) Willfully use, or endeavor to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this Subsection.

. Other charges appear on the indictments in the record, but those counts were charged in separate cases which are not the subject of this appeal.

. The State in brief stated: "The state concedes that La. R.S. 15:1303 is based upon the federal statute, and has no disagreement with the Carroll court’s finding that the key issue in that case was whether there was an objectively reasonable expectation of privacy in conversation.”

. Italics original.

. Italics original.