# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 19-738

JAMES ADDISON MCCALMONT, III

VERSUS

JAMES ADDISON MCCALMONT, IV AND
PAYTON BROOKS MCCALMONT

**********

ON APPEAL FROM
THE NINTH JUDICIAL DISTRICT COURT
DOCKET NUMBER 259,535, FOR THE PARISH OF RAPIDES
HONORABLE GEORGE C. METOYER, JUDGE

*********

**JONATHAN W. PERRY**
**JUDGE**

**********

Court composed of John E. Conery, D. Kent Savoie, and Jonathan W. Perry, Judges.

**PEREMPTORY EXCEPTION OF NO CAUSE
OF ACTION DENIED. JUDGMENT OF THE TRIAL COURT
GRANTING THE PEREMPTORY EXCEPTION OF RES JUDICATA IS
REVERSED. CASE REMANDED TO THE TRIAL COURT FOR
FURTHER PROCEEDINGS.**

**Todd A. Rossi**
**Michael J. deBarros**
**Kean Miller, LLP**
**P. O. Box 3513**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**Counsel for Appellant:**
     **JAMES ADDISON MCCALMONT, III**

**Curtis R. Shelton**
**Ayres, Shelton, Williams, Benson & Paine, LLC**
**P. O. Box 1764**
**Shreveport, LA 71166**
**(318) 227-3500**
**Counsel for Appellant:**
     **JAMES ADDISON MCCALMONT, III**

**Jimmy R. Faircloth, Jr.**
**Nathan W. Friedman**
**Mary K. Price**
**Faircloth, Melton, Sobel & Bash, LLC**
**105 Yorktown Drive**
**Alexandria, LA 71303**
**(318) 619-7755**
**Counsel for Appellee:**
     **JAMES ADDISON MCCALMONT, IV and**
     **PAYTON BROOKS MCCALMONT**[1]

---

[1] Payton was dismissed early in this litigation on a peremptory exception of no cause of action.

**PERRY, Judge.**

This case involves the question of whether a father's subsequent suit against his son for invasion of privacy and an alleged violation of Louisiana's Electronic Surveillance Act (hereafter the "Electronic Surveillance Act"), based upon almost verbatim allegations he asserted against his daughter in a prior suit, a suit now settled and dismissed with prejudice, was barred by res judicata. We reverse the trial court's judgment which sustained the peremptory exception of res judicata and further deny the son's peremptory exception of no cause of action filed for the first time in this court.

## FACTS AND PROCEDURAL HISTORY

This litigation centers on family contentions which begin with the divorce of James A. McCalmont, III (hereafter "James'), and Colleen Hawthorn (hereafter "Colleen") and end with separate lawsuits James filed, after the Colleen's death, first against his daughter Lauren Elizabeth McCalmont (hereinafter "Lauren") and then against his son, James A. McCalmont, III (hereafter "Jay").

On February 15, 2017, James sued his daughter, Lauren, alleging that she accessed his cell phone on or about July 31, 2016, furtively obtained information of embarrassing private facts about him, and then shared that information with third parties. This it was contended was an invasion of privacy and violated La.R.S. 15:1301–1318, the Electronic Surveillance Act. Just prior to James's lawsuit, Lauren had filed suit against James, alleging he had committed the tort of battery and had intentionally inflicted emotional distress on her. On April 4, 2017, James and Lauren settled their cross-litigation, each agreeing to dismiss the lawsuits they had brought against the other; in the settlement document, James reserved the right to sue third parties. On May 3, 2017, James's suit against Lauren and Lauren's suit against James were formally dismissed with prejudice.

On July 31, 2017, James, using almost verbatim language from his lawsuit against Lauren, sued his son, Jay, and Jay's wife, alleging that Jay disclosed information and data to third parties and James's wife, that Lauren had intercepted embarrassing private facts about James, and that this invaded his privacy and violated the Electronic Surveillance Act. After Jay's wife was dismissed from the lawsuit on a peremptory exception of no cause of action and after numerous other filings, Jay interposed a peremptory exception of res judicata to James's lawsuit against him. After conducting a hearing, the trial court sustained Jay's peremptory exception and dismissed James's lawsuit. In reaching this conclusion, the trial court stated:

> [I]t is the finding of this court that the peremptory exception of res judicata should have been granted as a second lawsuit of this matter would be arising out of the same transaction and occurrence that was the subject matter of the current litigation.

James perfected a suspensive appeal. He contends that the trial court erred: (1) when it found that the dismissal of his earlier lawsuit against Lauren was res judicata as to the present lawsuit by him against Jay, who was not a party to either the prior lawsuit or the settlement between him and Lauren; (2) when it found that "the peremptory exception of res judicata should have been granted as a second lawsuit of this matter would be arising out of the same transaction and occurrence that was the subject matter of the current litigation[;]" and (3) when it sustained the exception of res judicata and dismissed his lawsuit against Jay.

For the first time in this litigation, Jay has filed a peremptory exception of no cause of action in this court. In his motion, Jay contends that James has failed to state any cause of action against him based on either the general tort of invasion of privacy or the Electronic Surveillance Act. Accordingly, he asks this court to sustain his peremptory exception of no cause of action and dismiss James's petition with prejudice.

2

# NO CAUSE OF ACTION

It is well recognized that the peremptory exception of no cause of action may be filed in the appellate court. La.Code Civ.P. art. 2163; *Francis v. Lake Charles Am. Press*, 262 La. 875, 265 So.2d 206 (1972). Because a determination of this peremptory exception in Jay's favor would potentially terminate this litigation and make our analysis of the res judicata issue unnecessary, we will first address Jay's peremptory exception of no cause of action.

In *Nizamutdinova v. Kappa Sigma Fraternity*, 18-886, pp. 8-9 (La.App. 3 Cir. 10/2/19), 280 So.3d 1003, 1009–10, this court stated:

> A peremptory exception of no cause of action questions whether the law extends a remedy to anyone under the factual allegations of the petition. Its function "is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading." *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.*, 616 So.2d 1234, 1235 (La.1993). "No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." La.Code Civ.P. art. 931. "Every reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial." *Indus. Cos., Inc. v. Durbin*, 02-665, p. 7 (La. 1/28/03), 837 So.2d 1207, 1213. "All reasonable inferences are made in favor of the nonmoving party in determining whether the law affords any remedy to the plaintiff." *City of New Orleans v. Bd. of Dirs. of La. State Museum*, 98-1170, p. 9 (La. 3/2/99), 739 So.2d 748, 755.

> > Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought.

> > Louisiana has chosen a system of fact pleading. Therefore, it is not necessary for a plaintiff to plead the theory of his case in the petition. However, the mere conclusions of the plaintiff unsupported by facts does not set forth a cause of action.

> > The burden of demonstrating that the petition states no cause of action is upon the mover. . . . The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief.

*Ramey* [*v. DeCaire,* 03-1299 (La. 3/19/04)], 869 So.2d [114,] 118-19 (citations omitted).

In *City of New Orleans*, 739 So.2d at 756, our supreme court stated:

An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief. Thus, dismissal is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action, or when its allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings. [*City of New Orleans v.* ] *Board of Comm'rs of Orleans Levee Dist.*, [93-690 (La. 7/5/94),] 640 So.2d [] 237. A court appropriately sustains the peremptory exception of no cause of action only when, conceding the correctness of the well-pleaded facts, the plaintiff has not stated a claim for which he can receive legal remedy under the applicable substantive law.

In the present case, James's petition seeks damages from Jay based upon invasion of privacy and violations of the Electronic Surveillance Act. We will address those assertions individually.

*Invasion of Privacy*

Jay makes a twofold argument, urging that James's petition fails to state a cause of action for invasion of privacy. He argues that James's petition fails to allege any public disclosure of private facts and further fails to allege that Jay's conduct was either objectively unreasonable or that it seriously interfered with any privacy interest of James.

In *Norris v. King*, 355 So.2d 21, 23 (La.App. 3 Cir. 1978), *cert. denied*, 439 U.S. 995, 99 S.Ct. 596 (1978) (footnote omitted), this court stated:

The cause of action known as "invasion of privacy" has long been recognized and pronounced by the jurisprudence of this State. *Tooley v. Canal Motors, Inc.*, 296 So.2d 453 (La.App. 4 Cir. 1974) described the right of privacy as follows:

" . . . 'the right to be let alone' and as 'the right to live one's life in seclusion without being subjected to unwarranted and undesirable publicity'."

"As appears from the cited cases and as discussed at length in the Comment at 28 La.Law

Rev. (April 1968) malicious intent on the part of the defendant is not a necessary element in the prosecution of an invasion of privacy claim. If the defendant's conduct is unreasonable and seriously interferes with plaintiff's privacy the invasion is actionable."

This tort has usually been associated with conduct falling into one or more of the following classifications:

(1) Intrusion (*Lucas v. Ludwig*, 313 So.2d 12 (La.App. 4 Cir. 1975), *certiorari denied*, 318 So.2d 42 (La.));

(2) Public disclosure of private facts (*Lambert v. Dow Chemical Co.*, 215 So.2d 673 (La.App. 1 Cir. 1968); *Hamilton v. Lumbermen's Mutual Cas. Co.*, 82 So.2d 61 (La.App. 1 Cir. 1955);

(3) False light in public eye (*Tooley v. Canal Motors, Inc.*, *supra*);

(4) Appropriation of another's name (*Tooley v. Canal Motors, Inc.*, *supra*; *McAndrews v. Roy*, 131 So.2d 256 (La.App. 1 Cir. 1961).

Numerous paragraphs of James's petition allege facts detailing Jay's intrusion into the private life of his father. Moreover, despite Jay's contention that there are no allegations of Jay's dissemination of that information other than to his mother, Paragraph 7 of James's petition alleges that "on one or more occasions, [Jay] . . . used and further disclosed that information and data to third parties." After carefully reviewing James's petition, we find the petition states a cause of action for the public disclosure of private facts and for the intrusion upon his solitude.

*Electronic Surveillance Act*

In his petition against Jay, James argues that Jay's acts violated the Electronic Surveillance Act. In particular, James contended that information was taken from his cell phone without his knowledge or consent, that this information was James's stored electronic communications, data and information, including messages, and/or electronically stored data that these electronically stored communications and data

were intentionally taken and shared between Lauren and Jay, including pictures, and that Jay used these electronically stored communications and data in an effort to cause James harm and damages, and to embarrass him.

Before us, Jay argues that James's petition fails to state a cause of action under the Electronic Surveillance Act. Although Jay makes this contention, our review of his brief shows that he only makes conclusory statements and provides no analysis of the allegations of James's petition which would support his contention to this court that James's petition fails to state a cause of action based thereon. "The burden of showing that the plaintiff has stated no cause of action is upon the exceptor." *City of New Orleans*, 739 So.2d at 755. Jay fails to carry that burden as the exceptor. Therefore, we find no merit to Jay's argument that James's petition fails to state a cause of action for a violation of the Electronic Surveillance Act.

For the foregoing reasons, we deny Jay's peremptory exception of no cause of action.

## ON THE MERITS

### *Standard of Review*

"The standard of review of a peremptory exception of *res judicata* requires an appellate court to determine if the trial court's decision is legally correct." *Fletchinger v. Fletchinger,* 10–0474, p. 4 (La.App. 4 Cir. 1/19/11), 56 So.3d 403, 405. "[T]he doctrine of *res judicata* is *stricti juris* and, accordingly, any doubt concerning the applicability of the principle must be resolved against its application." *Id.,* at 406.

### *Res Judicata*

"An exception is a means of defense, other than a denial or avoidance of the demand, used by the defendant, whether in the principal or an incidental action, to retard, dismiss, or defeat the demand brought against him." La.Code Civ.P. art. 921.

"The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La.Code Civ.P. art. 923. The exception of *res judicata* is properly raised as a peremptory exception. La.Code Civ.P. art. 927(A)(3). "The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision and may be filed with the declinatory exception or with the dilatory exception, or both." La.Code Civ.P. art. 928(B). "On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La.Code Civ.P. art. 931. If the grounds of the peremptory exception cannot be removed by amending the petition, the claims shall be dismissed. La.Code Civ.P. art. 934.

Res judicata promotes the dual purposes of judicial efficiency and the final resolution of disputes by preventing needless relitigation. *Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.*, 95-0654 (La. 1/16/96), 666 So.2d 624. Louisiana Revised Statutes 13:4231 states:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

"'The burden of proof is upon the pleader to establish the essential facts to sustain the plea of res judicata.'" *Mundell v. Mundell,* 03–631, p. 2 (La.App. 3 Cir. 11/5/03), 858 So.2d 768, 770 (quoting *Ins. Assocs., Inc. v. Francis Camel Constr., Inc.,* 95-1955 (La.App. 1 Cir. 5/10/96), 673 So.2d 687); *see also Louisiana Workers' Comp. Corp. v. Betz,* 00-0603, p. 3 (La.App. 4 Cir. 4/18/01), 792 So.2d 763, 765. If "all essential elements are present and each necessary element has been established beyond all question," *res judicata* may be invoked. *Id.* Moreover, the res judicata doctrine must be strictly construed, and any doubt concerning its applicability is resolved against the party raising the objection. *Berrigan v. Deutsch, Kerrigan & Stiles, LLP*, 01-0612 (La.App. 4 Cir. 1/2/02), 806 So.2d 163, *writs denied*, 02-338, 02-341 (La. 4/12/02), 813 So.2d 410.

James's argument that the trial court's recognition of the peremptory exception of res judicata was erroneous is threefold: first, there was no prior judgment between the same parties to support the plea of res judicata; second, Lauren could not be deemed in privity with Jay for the purpose of res judicata; and third, James's claims against Jay are distinct from the claims he made against Lauren.

Jay's argument to the trial court and again to us is that the dismissal of James's suit against Lauren barred all subsequent claims arising out of the same transaction or occurrence as against Lauren and any party in privity with Lauren, namely, Jay. In particular, Jay argues that Lauren adequately represented his interest in the prior suit such that she was his "virtual representative" in the initial litigation which James brought.

We begin with the premise that "[t]he doctrine of *res judicata* precludes re-litigation of all causes of action arising out of the same transaction or occurrence that were the subject matter of a prior litigation **between the same parties**." *Contogouris v. Ocean Therapy Sols., LLC*, 15-0472, p. 5 (La.App. 4 Cir. 1/27/16), 187 So.3d 18,

8

21, *writ denied*, 16-367 (La. 4/15/16), 191 So.3d 591 (emphasis added). In the present case, although James is the same party-plaintiff in both matters, Jay was not a party-defendant in James's lawsuit against Lauren. Therefore, we must examine whether Lauren may have been in privity with Jay for purposes of res judicata.

Although identity of the parties does not mean that the parties must be the same physical or material parties, they nonetheless must appear in the suit in the same quality or capacity. *Certified Fin., Inc. v. Cunard*, 01-0797 (La.App. 1 Cir. 4/17/02), 838 So.2d 1, *writ denied*, 02-1802 (La. 10/14/02), 827 So.2d 424. The parties are required to be the same "only in the legal sense of the word." *Berrigan*, 806 So.2d at 167.

> In *Cunard*, 838 So.2d at 4-5, the first circuit stated:
>
> Following the federal law from which our new res judicata statute was taken, Louisiana courts have held that the preclusive effect of a judgment binds the parties to an action and the nonparties who are deemed the "privies" of the parties in three limited circumstances: 1) the nonparty is the successor in interest of a party; 2) the nonparty controlled the prior litigation; and 3) the nonparty's interests were adequately represented by a party to the action who may be considered the "virtual representative" of the nonparty because the interests of the party and the nonparty are so closely aligned. *Thomas v. Janzen*, 35,288, pp. 12–13 (La.App. 2d Cir.10/31/01), 800 So.2d 81, 89; *Condrey v. Howard*, 28,442, p. 5 (La.App. 2 Cir. 8/21/96), 679 So.2d 563, 566–67, *writ denied*, 96–2335 (La.11/22/96), 683 So.2d 281, *citing Meza v. General Battery Corp.*, 908 F.2d 1262 (5th Cir.1990).

*See also Hudson v. City of Bossier*, 33,620 (La.App. 2 Cir. 8/25/00), 766 So.2d 738, *writ denied*, 00-2687 (La. 11/27/00), 775 So.2d 450.[2]

---

[2] In *Smith v. LeBlanc*, 06-0041 (La.App. 1 Cir. 8/15/07), 966 So.2d 66, 78, the court further elaborated on privity as follows:

> Identity of parties is satisfied when a privy of one of the parties is involved. *Burguieres* [*v. Pollingue*, 02-1385 (La. 2/25/03)], 843 So.2d [1049,] at 1054 n. 3. In its broadest sense, "privity" is the mutual or successive relationship to the same right of property, or such an identification in interest of one person with another as to represent the same legal right. *Noel v. Jumonville Pipe & Machinery Co.*, 245 La. 324, 158 So.2d 179, 184 (1963); *see Five N Company, L.L.C. v. Stewart*, 02–0181 (La.App. 1st Cir.7/2/03), 850 So.2d 51, 61–62; *see also O'Bannon for O'Bannon v. Azar*, 506 So.2d 522 (La.App. 1st Cir.), *writ denied*, 511 So.2d 1158 (La.1987);

9

In the present case, it is abundantly clear that Jay was not a party to James's lawsuit against Lauren. Although *Cunard* recognized three limited circumstances on which a claim for res judicata involving non-parties may be based, he makes no argument that he was either a successor to the interest of Lauren or that he controlled the prior litigation. Rather, Jay focuses solely on Lauren being his virtual representative.

In *Meza*, 908 F.2d at 1272, the fifth circuit observed:

> The question of virtual representation is to be kept within "strict confines." *Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1175 (5th Cir.1987) (*quoting Hardy v. Johns–Manville Sales Corp.*, 681 F.2d 334, 339 (5th Cir.1982)). Among the "strict confines" is a requirement that there be "an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." *Benson and Ford,* 833 F.2d at 1175; *Hardy,* 681 F.2d at 340; *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir.1978).

Such representation "requires more than a showing of parallel interests—it is not enough that the non-party may be interested in the same questions or proving the same facts." *Eubanks v. Fed. Deposit Ins. Co.*, 977 F.2d 166, 170 (5th Cir.1992); *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860 (5th Cir.1985). Just as the Supreme Court specifically rejected "an expansive doctrine of virtual representation," *Taylor v. Sturgell*, 553 U.S 880, 896, 128 S.Ct. 2161 (2008), so has the U.S. Fifth Circuit Court of Appeals, s*ee, Gulf Island–IV, Inc. v. Blue Streak–Gulf Island Operations*, 24 F.3d 743 (5th Cir.1994) (quoting *Eubanks*, 977 F.2d at 170); *White v. Fox*, 576 Fed.Appx. 327 (5th Cir. 2014).

---

*Middleton v. Parish of Jefferson*, 97–324 (La.App. 5th Cir.1/14/98), 707 So.2d 454, 456, *writ denied*, 98–0403 (La. 3/27/98), 716 So.2d 896.

See these examples of identical parties: *State, Dept. of Soc. Serv. v. Coleman*, 616 So.2d 844 (La.App. 3 Cir.1993) (state representing mother's right to enforce child support obligation); *Cornish v. Freeman*, 451 So.2d 148 (La.App. 1 Cir.), *writ denied*, 458 So.2d 476 (La.1984) (insured and her liability insurer, to extent of policy limits); *Ditch v. Finkelstein*, 399 So.2d 1216 (La.App. 1 Cir.1981) (parties to compromise and their heirs); *Baker v. Wheless Drilling Co.*, 303 So.2d 511 (La.App. 2 Cir. 1974) (employer-employee and lessor-lessee relationships).

In his brief to this court, Jay discretely differentiates his argument between James's claim under the Electronic Surveillance Act and his invasion of privacy claim[3] in an effort to exemplify that Lauren was his virtual representative.

Jay first contends that James's lawsuit against him is based on an alleged violation of the "use" and "disclosure" provisions of the Electronic Surveillance Act.[4] As a predicate to that allegation, Jay argues that it would be first incumbent upon James to prove that Lauren intercepted electronic communications. *See State v. Smith*, 02-2736, p. 3 (La.App. 4 Cir. 5/21/03), 848 So.2d 650, 652 (holding that "there is no violation of the use and disclosure prohibition unless there is first a violation of the interception prohibition.") This, Jay says, is a legal impossibility because James has dismissed his interception claim against Lauren with prejudice. Therefore, Jay further takes the position that the doctrine of res judicata bars James's current lawsuit against him because James's cause of action against him and Lauren were so intertwined that the earlier dismissal of the lawsuit against Lauren is fatal to the viability of the current action against him. We disagree.

---

[3] In the event the court should determine that one, but not both, of the claims brought against him are not barred by res judicata, Jay alternatively argues that we only dismiss the claim deemed barred.

[4] Louisiana Revised Statutes 15:1303 provides, in pertinent part:

A. Except as otherwise specifically provided in this Chapter, it shall be unlawful for any person to:

(1) Willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, electronic or oral communication;
. . . .

(3) Willfully disclose, or endeavor to disclose, to any other person the contents of any wire, electronic, or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire, electronic, or oral communication in violation of this Subsection; or

(4) Willfully use, or endeavor to use, the contents of any wire, electronic, or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire, electronic, or oral communication in violation of this Subsection.

Jay improperly commingles James's general burden of proof with the legal import of James's dismissal with prejudice of his claims against Lauren. Rather than being mutually binding, their legal effect is separate and distinct. Granted, James's dismissal of his lawsuit against Lauren with prejudice prevents him from ever reasserting the claims asserted therein against **her**. On the other hand, as a matter of proof in the current lawsuit against Jay, James is not precluded from utilizing Lauren's testimony about her interception of any wire, electronic or oral communications, potential violations of La.R.S. 15:1303(A)(1), as an element of proof that Jay willfully disclosed and or used that intercepted communication, a potential violation of La.R.S. 15:1303(A)(2) and (3). Simply stated, there exists a myriad of ways that James can establish an interception of communications in violation of the Electronic Surveillance Act despite James's earlier dismissal of his action against Lauren.

Jay further argues that James's cause of action against him based upon the Electronic Surveillance Act arises out of the same transaction or occurrence and existed at the time that the final judgment was rendered in James's first lawsuit against Lauren. Relying on *Jackson v. Iberia Par. Gov't*, 98-1810 (La. 4/16/99), 732 So.2d 517, 524, Jay further argues that "inherent in the concept of res judicata is the principle that a party had the opportunity to raise a claim in the first adjudication, but failed to do so." On this basis, Jay contends that under the rules of claim preclusion, James's action against him is precluded because this action could have been pleaded earlier in his lawsuit against Lauren and was not. We find otherwise.

In *Terrebonne Fuel & Lube, Inc*, 666 So. 2d at 631-32 (emphasis added), the supreme court stated:

> The purpose of both federal and state law on res judicata is essentially the same; to promote judicial efficiency and final resolution of disputes

12

by preventing needless relitigation. As explained by former Chief Justice John A. Dixon, Jr.,

> It is implicit in the concept of a judicial system that controversies be finally resolved so that parties may enjoy their rights and so that conflicting legal obligations may not be imposed on an individual; litigation must end at some point. Precluding relitigation prevents inefficient use of the courts' resources, reduces the possibility of harassment through vexatious suits, and helps maintain respect for the judicial proceeds by guarding against inconsistent decisions.

Dixon, Booksh, Zimmering, *Res Judicata in Louisiana since Hope v. Madison*, 51 Tul.L.Rev. 611 (1977), footnotes in quotation omitted.

Under common law, the doctrine of res judicata focuses on "extinguishment" of the cause of action. A plaintiff's cause of action "merges" into a judgment for plaintiff, whereas a judgment for defendant "bars" relitigation of the cause of action, which is considered to be extinguished. "Since the cause of action is extinguished by the lawsuit, **res judicata precludes litigation of not only that which was pleaded but also any issue which might have been pleaded with regard to that cause of action**." Arbour, *The Louisiana Concept of Res Judicata*, 34 La.L.Rev. 763, 764 (1974).

Initially, we note that although James's action against Lauren ended when they settled their differences with a compromise agreement, there was no judicial determination on the issue of her interception of communications under the Electronic Surveillance Act. Louisiana Revised Statutes 13:4231(3) (emphasis added) provides, "A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, **with respect to any issue actually litigated and determined** if its determination was essential to that judgment." The determination of interception, a predicate to James's action against Jay, is a legal question yet to be determined. *See Interdiction of Hunter*, 18-685 (La.App. 4 Cir. 9/11/19), 2018 WL 6683212, *writ denied*, 19-208 (La. 4/8/19), 267 So.3d 608. Thus, at least with regards to James's claim under the Electronic Surveillance Act, there is no merit to Jay's argument that claim preclusion prevents James's current lawsuit against him.

Turning next to the separate argument that James's invasion of privacy claim against him is barred by res judicata, Jay contends that this subsequent lawsuit against him should be precluded because even a non-party is treated as a party for purposes of adjudicating/assessing fault.[5]  In support of his argument, Jay makes the assumption that he and Lauren, if found liable, would share fault.  Accordingly, he asserts that he should have been considered as an unnamed party in the suit against Lauren for purposes of res judicata.  *See Williams v. City of Marksville*, 02-1130 (La.App. 3 Cir. 3/5/03), 839 So.2d 1129.[6]  For reasons which follow, we disagree.

A valid compromise can form the basis of a plea of res judicata.  *Ortego v. State, Dep't of Transp. & Dev.*, 96-1322 (La. 2/25/97), 689 So.2d 1358; *Marsh v. USAgencies Cas. Ins. Co.*, 42,176 (La.App. 2 Cir. 5/16/07), 957 So.2d 901, *writ denied*, 07-1286 (La. 10/26/07), 966 So.2d 575.  Nevertheless, a party claiming res

---

[5] Louisiana Civil Code Article 2323 provides, in pertinent part:

>    A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty[.]
>    . . . .
>    B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

[6] In *Williams*, 839 So.2d at 1132–33 (footnotes omitted), this court held:

>    Thus, even though not formally joined in the suit, for all intents and purposes, even a nonparty is treated as if s/he is a party for the purpose of allocating a percentage of fault to that "party" in order to reduce the percentage of fault allocated to the actual litigants and it stands to reason for purposes of res judicata. However, this does not mean that a nonparty is responsible if cast in judgment since to do so would violate that person's due process rights by binding the non-party without giving that person an opportunity to be heard.

>    Thus, while Ms. Williams did not "third party" the City in Officer Bordelon's suit, when she attempted to use the City's fault for an allegedly defective intersection as an affirmative defense, in effect, she put the City's fault in this regard at issue and is precluded from asserting it a second time in another suit. Moreover, Ms. Williams did not appeal the fault allocation in that suit, making it a final adjudication of the City's fault, even though the trial court did not, specifically, address the City's fault in its allocation. It is sufficient for res judicata purposes that the pleadings and law indicate the grounds for the trial court's judgment.

judicata based on a compromise agreement must have been a party to the compromise. *Rodriguez v. Louisiana Tank, Inc*., 94-0200 (La.App. 1 Cir. 6/23/95), 657 So.2d 1363, *writ denied*, 95-2268 (La. 11/27/95), 663 So.2d 739. Persons who were not parties to a compromise by other interested parties were not bound thereby and could not take any advantage flowing from it. *Cantu v. Schlumberger*, 50,605 (La.App. 2 Cir. 5/25/16), 197 So.3d 191, *writ denied*, 16-1307 (La. 10/28/16), 208 So.3d 888.

In the present case, it is clear James and Lauren were the only signatories to the Settlement Agreement that ended James's initial action against Lauren and Lauren's action against James. More precisely, that settlement agreement expressly limited its provisions to James's and Lauren's claims against each other.[7] The Settlement Agreement specifies as follows:

> *Section 2.5. Limit of Releases and Waivers.* The releases and waivers granted by James and Lauren are not intended to be, and shall not be or interpreted to be, a release of waiver by James or Lauren of any other rights, obligations, or causes of action existing between or among James and Lauren or James and Lauren and any third parties. Without limiting the foregoing, nothing in this Agreement is intended to affect, change, or alter any property rights of James and Lauren, further including, but not limited to, any such rights acquired by inheritance, donation inter vivos or mortis causa, or otherwise.

The Settlement Agreement further stated: "This Agreement in no way constitutes a third-party beneficiary contract or *stipulation pour autrui* in favor of any third party."

Notwithstanding the very specifics of the settlement agreement entered into by James and Lauren, Jay further argues that the provisions of the settlement were of no moment because James failed to reserve his third-party rights in the judgment in which he dismissed his action against Lauren. We find no merit to Jay's argument.

---

[7] The Settlement Agreement was of separate lawsuits that had been pending between James and Lauren as reflected in lawsuit numbers 258,106 and 256,891 in Rapides Parish.

Louisiana Civil Code Article 1802, provides, "Renunciation of solidarity by the obligee in favor of one or more of his obligors must be express. An obligee who receives a partial performance from an obligor separately preserves the solidary obligation against all his obligors after deduction of that partial performance." The 1984 Revision Comments to La.Civ.Code art. 1802 further state, in pertinent part:

> This Article is new. It changes the law insofar as it eliminates the presumption of renunciation or waiver of solidarity in the absence of a reservation by the obligee and, as a consequence, the requirement of a receipt extended in a particular manner. The rule in this Article is consistent with the principle that a party should not be presumed to have given up a right.

In *Soileau v. Smith True Value & Rental*, 12-1711 (La. 6/28/13), 144 So.3d 771, 785–86, our supreme court contrasted La.Civ. Code art. 1802 to its predecessor, La.Civ.Code art. 2203, stating:

> Former Louisiana Civil Code article 2203 provided that an obligee who remitted a debt in favor of one solidary obligor, without expressly reserving his right against the others, was deemed to have forfeited the entire obligation. However, this rule was abandoned in favor of the converse: the present law provides that when partial payment is received, solidary liability is preserved unless it is expressly renounced. Louisiana law no longer requires a reservation of rights be included in a release to protect a settling plaintiff's right to pursue his or her claims against non-settling solidary obligors. *See Dukes v. Declouette,*10–0045 (La.App. 1 Cir. 6/11/10), 40 So.3d 1231, 1235, *writ denied,* 10–1623 (La.10/8/10), 46 So.3d 1270 (citing *Sumrall v. Bickham,* 03–1252 (La.App. 1 Cir. 9/8/04), 887 So.2d 73, 80–81, *writ denied,* 04–2506 (La.1/7/05), 891 So.2d 696 (Parro, J., concurring)). Louisiana Civil Code article 1802 now specifically reads, "Renunciation of solidarity by the obligee in favor of one or more of his obligors must be express."

Relying on this analysis, the court held that although a plaintiff dismissed individual defendants and their company with prejudice during trial, it was permissible for the plaintiff to continue her action against the insurer-defendant of these individuals; this was allowable even though the plaintiff had not specifically reserved her rights in this regard when the insureds were dismissed. This same analysis is dispositive of Jay's argument in the present case.

In *Hudson v. City of Bossier,* 33,620, pp. 7-8 (La.App. 2 Cir. 8/25/00), 766 So.2d 738, 743, *writ denied,* 00-2687 (La. 11/27/00), 775 So.2d 450, the second circuit stated:

> The opportunity to be heard is an essential requisite of due process of law in judicial proceedings. Giving conclusive effect to a prior judgment against one who is neither a party nor in privity with the party therein contravenes due process. As a consequence, a judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings. *Richards v. Jefferson County*, 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 7664(sic) (1996). Thus, without identity between the parties in the first and subsequent actions, an exception of res judicata will not be maintained. *Tranchina v. State*, 99-1332 (La.App. 4th Cir. 06/09/99), 740 So.2d 713.

After considering the above arguments, it is clear Jay failed to carry his burden of proving he was a party to the prior litigation or that his sister Lauren was his virtual representative. Therefore, we find the trial court legally erred when it granted Jay's peremptory exception of res judicata.

## DISPOSITION

For the foregoing reasons, we deny the peremptory exception of no cause of action James Addison McCalmont, IV, advanced in this court. We further reverse the judgment of the trial court which dismissed James Addison McCalmont, III's lawsuit against James Addison McCalmont, IV, on a peremptory exception of res judicata. This matter is remanded to the trial court for further proceedings. Costs of appeal are assessed to James Addison McCalmont, IV.

**PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION DENIED. JUDGMENT OF THE TRIAL COURT GRANTING THE PEREMPTORY EXCEPTION OF RES JUDICATA IS REVERSED. CASE REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.**